**Larry MARCH, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–4522.

Court of Appeals of Alaska.

Oct. 1, 1993.

Jennifer K. Wells, Asst. Public Defender, Kenai, and John B. Salemi, Public Defender, Anchorage, for appellant.

Joseph N. Levesque, Asst. Dist. Atty., Kenai, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Larry March was convicted by a jury of taking a bull moose "same day airborne," in violation of 5 AAC 92.085(8).[1]

March and Jesse Sweatt flew into Paradise Valley on September 1, 1991. Later that same day, one or both of them shot

---

1. 5 AAC 92.085(8) provides in relevant part:
   [N]o person who has been airborne may take or assist in taking a big game animal until after 3:00 o'clock a.m. following the day in which the flying occurred....

and killed a bull moose.[2] The offense came to light approximately three weeks later when two witnesses to the shooting reported it to Fish and Game officials. The witnesses had heard the shots and had seen March and Sweatt with the moose after it was killed, but they had not seen who fired the shots.

Prior to trial, March moved to dismiss the charge on the ground that the state had violated his right to due process by failing to send an officer to the site of the alleged offense to gather evidence. March speculated that evidence at the kill site, including the remains of the moose and spent shells or bullets, might have supported his claim that Sweatt was the only one who shot at the moose.

At the hearing on the motion to dismiss, the investigating officer on the case, Trooper Robert Lester, testified that he received the first report of the illegal taking on September 23, twenty-two days after the moose had been killed. Lester thereafter made three requests to his supervisor for the use of a plane to fly into Paradise Valley and investigate the kill site. The Fish and Game airplanes were apparently tied up on other jobs. Lester made no more requests for a plane after snow started to fall in the Paradise Valley area in October. He never did travel to the kill site. It was Lester's understanding from speaking to witnesses that all of the salvageable meat, as well as the rack of antlers, had been taken from the kill site by Sweatt and March. Because three weeks had passed by the time he first heard of the offense, and given the effect of scavenging animals and the difficulty in locating the exact kill site, Lester said he would not have expected to find any evidence even if he had been able to fly into Paradise Valley.

■ March mischaracterizes the state's conduct in this case as a failure to preserve evidence. The state's duty to preserve evidence that is discoverable by the defendant "attaches once any arm of the state has first gathered and taken possession of the evidence in question." *Putnam v. State,* 629 P.2d 35, 43 n. 16 (Alaska 1980); *Abdulbaqui v. State,* 728 P.2d 1211, 1217 (Alaska App.1986). In this case, the state never had possession or control of any items that might have been found at the kill site, so the duty to preserve evidence was never activated.

■ While officers have a duty to preserve potentially exculpatory evidence actually gathered during a criminal investigation, the due process clause has never required officers to undertake a state-of-the-art investigation of all reported crimes. Officers investigating a crime need not "track down every conceivable investigative lead and seize every scintilla of evidence regardless of its apparent importance or lack of importance at the time, or run the risk of denying a defendant due process or his discovery rights." *Nicholson v. State,* 570 P.2d 1058, 1064 (Alaska 1977). Here, the trial court found it to be highly improbable that any evidence could have been gathered at the kill site by the time the offense was reported to the troopers. This finding is not clearly erroneous. Furthermore, there is no indication in the record that the failure of Fish and Game officials to make an airplane available to Trooper Lester was the result of anything but a good faith determination that the limited number of Fish and Game aircraft could be better used elsewhere. *See Nicholson,* 570 P.2d at 1064. We find no violation of March's due process rights. The motion to dismiss was properly denied.

■ March also argues that the court's failure to declare a mistrial *sua sponte* was plain error. Prior to trial, March obtained a protective order against any mention of a fishing violation of which he had previously been convicted. Jesse Sweatt, testifying for the state, violated the protective order by referring to March's fishing violation. March's objection to this testimony was sustained. Despite the favorable ruling on

---

**2.** Sweatt testified that March initially shot and injured the moose and that Sweatt then fired the killing shot. March testified that he never fired at the moose; he claimed that Sweatt did all of the shooting.

his objection, March now claims error. He argues that the court should have granted him a remedy he did not request: the declaration of a mistrial.

■ In arguing that Sweatt's testimony warranted a mistrial "whether or not the defense requested it," March overlooks an important point: the trial court's authority to declare a mistrial *sua sponte* is exercised subject to the constraints of the defendant's right to have his trial completed by a particular jury. Jeopardy attaches when the jury is sworn. If the court discharges the jury before a verdict is reached, "the defendant cannot be retried unless he consented to the discharge or 'manifest necessity' required it." *Koehler v. State*, 519 P.2d 442, 448 (Alaska 1974); *Staael v. State*, 697 P.2d 1050, 1053 (Alaska App.1985).

Here, because March did not request a mistrial, declaration of a mistrial would have violated his double jeopardy right absent an independent basis for concluding that there was a "manifest necessity" for a mistrial. *Koehler*, 519 P.2d at 448; *Browning v. State*, 707 P.2d 266, 269 (Alaska App.1985). The record in this case does not disclose the "very extraordinary and striking circumstances," under which a mistrial may be declared without the defendant's consent. *Lewis v. State*, 452 P.2d 892, 896 (Alaska 1969). We find no error in the court's failure to declare a mistrial *sua sponte.*

■ March's final claim of error is that the trial court erred in refusing to order the state to produce Trooper Lester's personnel file for *in camera* review.

While March was awaiting trial, his brother, Louie March, wrote a letter to the Fish and Wildlife Protection Agency, complaining that Trooper Lester had given preferential treatment to Jesse Sweatt in handling this case. Prior to trial, March requested discovery of the file on the internal investigation prompted by his brother's letter. Included in the file were statements by Sweatt, who had been interviewed in connection with the internal investigation. March also requested discovery of Lester's personnel file, arguing that the file might contain evidence that Lester had previously given preferential treatment to acquaintances or friends of his in other cases.

In an order dated February 27, 1992, the trial court ordered the state to produce Lester's personnel file and the internal investigation file for *in camera* review. The state moved for reconsideration. Upon reconsideration, the court rescinded its order for *in camera* review of Lester's personnel file.

The court expressed doubt as to the relevance of the requested materials. The court noted that evidence of citizen complaints in other cases would not establish Lester's bias against March and that March would not be able to use specific acts by Lester to establish Lester's dishonesty or to impeach him on collateral matters. Balancing March's need for discovery against the privacy of the personnel file, the court found that the privacy interests outweighed the need for discovery of inadmissible material. The court denied March's request for *in camera* review of the file, at least until March could make a showing that the file might contain admissible evidence of Lester's bias.

■ The proper procedure to be followed when a party requests discovery of confidential materials is for the court to conduct an *in camera* inspection of those materials and then determine which, if any, are discoverable. This procedure has been repeatedly approved by this court and the Alaska Supreme Court. *See, e.g., Jones v. Jennings*, 788 P.2d 732, 739 (Alaska 1990); *Balentine v. State*, 707 P.2d 922, 929 (Alaska App.1985); *Braaten v. State*, 705 P.2d 1311, 1320–21 (Alaska App.1985). *In camera* review of confidential materials has also been held by the United States Supreme Court to be the proper procedure for safeguarding a criminal defendant's due process rights to discovery of exculpatory information. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 41, 107 S.Ct. 989, 993, 94 L.Ed.2d 40 (1987).

■ The state cites no authority to support the proposition that a defendant seek-

ing *in camera* review of confidential materials must make a threshold showing to establish the admissibility of the materials that might be found therein. We are concerned that the trial court's requirement that March demonstrate the admissibility of materials in Lester's file as a prerequisite to *in camera* review of the file may have been unduly stringent. A party seeking discovery cannot be expected to convincingly argue admissibility in a vacuum, without knowing the precise character of the information in the confidential file. Nor can the trial court make an informed ruling on the discoverability of confidential materials without having reviewed them. As long as the party seeking discovery has a good faith basis for asserting that the materials in question may lead to the disclosure of favorable evidence, the trial court should conduct an *in camera* review before ruling on a request for discovery.

Because the trial court in this case denied March's discovery request without first conducting an *in camera* review of the confidential materials, we find it necessary to remand the case for further proceedings. On remand, the trial court should review Lester's personnel file; if the *in camera* review reveals any information that would be relevant and material to March's defense, that information should be turned over to March. *Jones v. Jennings*, 788 P.2d 732, 739 (Alaska 1990); *Dana v. State*, 623 P.2d 348, 355 (Alaska App.1981). In that event, a new trial should be ordered unless the court determines that the failure to provide the information amounted to harmless error. *See Love v. State*, 799 P.2d 1343, 1344 (Alaska App.1990). If no discoverable evidence is disclosed, March's conviction should stand.

The district court's ruling on March's motion to dismiss is affirmed, as is the court's failure to declare a mistrial *sua sponte*. With regard to March's request for discovery of Lester's personnel file, the case is REMANDED for further proceedings consistent with this opinion.