Brenda J. SINGLETON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5578.

Court of Appeals of Alaska.

July 5, 1996.

---

Ethan A. Berkowitz, Anchorage, for Appellant.

Cynthia L. Herren, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Brenda J. Singleton was convicted by a jury of robbery in the second degree, AS 11.41.510(a)(1). On appeal, she argues that the trial court erred in allowing an unqualified person to serve as a juror and that the state failed to preserve exculpatory evidence. We affirm.

Singleton and two codefendants, Dudley Fuqua, Jr., and Tyree McCray, were jointly indicted and tried for robbing Elaine G. Copeland. The robbery occurred outside Copeland's Anchorage apartment building. Singleton, Fuqua, and McCray—possibly accompanied by two other people—had driven to the building in a white van, ostensibly to enable Singleton to get money that she claimed Copeland owed her. An altercation between Singleton and Copeland ensued, culminating in Singleton forcibly taking a jacket, which had $201 cash in its pocket, from Copeland's person. After Singleton took the jacket, she, Fuqua and McCray left the area in the van.

The incident was immediately reported to the police by the manager of Copeland's apartment building. A short time later, the police found the van stopped on a nearby street, with Singleton, Fuqua, McCray, and two or three other people present. Copeland and a friend of her's who had witnessed the robbery were brought to the scene and identified Singleton, Fuqua, and McCray. They were arrested. Copeland and her friend evidently told the police that the other individuals' present at the arrest scene had not been involved in the incident.

The state brought Singleton, Fuqua and McCray to trial on robbery charges. During the jury selection process, prospective juror Richard Porter disclosed that he had been convicted ten years previously of "felony retail theft" for stealing 52 cartons of cigarettes from a store in Chicago. Porter stated that he had served seventeen days in jail for the offense and had received three years' probation, which he had successfully completed. Because he never received any formal notice that his civil rights had been restored, Porter had not hunted or voted since his conviction. Porter did not believe the conviction would affect his ability to be fair and impartial.

All parties had the opportunity to question Porter about his prior conviction and his fitness for jury service. All passed him for cause, and none exercised a peremptory challenge.

For the first time on appeal, Singleton questions Porter's qualifications to serve as a juror. Singleton cites AS 09.20.020(2), which provides that "[a] person is disqualified from serving as a juror if the person ... (2) has been convicted of a felony for which the person has not been unconditionally discharged[.]" Singleton argues that, since Porter's civil rights had apparently never

been restored, he had not been "unconditionally discharged" and therefore did not qualify for jury duty. Singleton insists that, for this reason, the trial court was obligated to strike Porter from the panel *sua sponte.* Singleton maintains that Porter's inclusion on the panel violated her right to an impartial jury; she further maintains that she was deprived of due process because she was never personally informed of her right to challenge Porter for cause and did not knowingly waive that right.

Strong authority supports the conclusion that Singleton waived her argument on appeal by failing to exercise a challenge—either for cause or peremptory—after learning of Porter's potential disability. *See United States v. Boney,* 977 F.2d 624, 632–34 (D.C.Cir.1992); *Sirotiak v. H.C. Price Co.,* 758 P.2d 1271, 1275 n. 2 (Alaska 1988); *Sharp v. State,* 837 P.2d 718, 723 (Alaska App.1992). However, we need not decide the issue of waiver, for here the record fails to substantiate Singleton's claim that Porter was disqualified.

Singleton builds her argument for Porter's disqualification on the premise that formal restoration of Porter's civil rights—such as the right to vote or to carry a firearm—was a prerequisite to Porter's being "unconditionally discharged" from his prior felony conviction, as required under AS 09.20.020(2). However, the juror disqualification statute itself specifies that the term "unconditional discharge has the meaning given in AS 12.55.185." AS 09.20.020(2). Alaska Statutes 12.55.185 defines the term "unconditional discharge" to mean "that a defendant is released from all disability arising under a sentence, including probation and parole[.]" This definition conditions renewed eligibility for jury service upon release from all restrictions directly imposed "under a sentence," but not from collateral disabilities—such as loss of firearms or voting privileges—that flow from sources outside the judgment of conviction or sentencing order. Singleton cites no authority to support a departure

from the apparent plain meaning of the statutory definition.

Moreover, adopting Singleton's argument would yield anomalous results. Alaska's voting laws illustrate the point. Under AS 15.05.030(a), any person convicted of a felony involving moral turpitude loses the right to vote "from the date of the conviction through the date of the unconditional discharge of the person." For purposes of this provision, the term "unconditional discharge" is defined in AS 15.60.010(33) to mean "that a person is released from all disability arising under a conviction and sentence, including probation and parole[.]" This definition is functionally identical to the definition of the same term set out in AS 12.55.185(12), which AS 09.20.020(2) adopts for purposes of determining juror qualification.

When viewed through the prism of the voting statutes, the flaw in Singleton's argument becomes apparent. For if, as Singleton argues, the right to vote must be restored as a prerequisite of unconditional discharge, then a person's right to vote could never be restored: under AS 15.05.030(a) a person who lost the right to vote upon conviction of a felony would be entitled to have that right restored only upon unconditional discharge, but unconditional discharge could occur only upon restoration of the right to vote. Singleton's definition of unconditional discharge would thus be wholly circular and entirely self-defeating.

■ We conclude that the definition of "unconditional discharge" set forth in AS 12.55.185 must be interpreted in accordance with the statute's plain meaning. So interpreted, unconditional discharge requires completion of any sentence of imprisonment, discharge from parole or probation, and release from any other restriction directly imposed as part of the judgment of conviction. Restoration of collaterally affected rights or privileges is not required.[1]

■ Applying this interpretation to Singleton's case, we conclude that the record

---

1. In this connection, it is worth noting that the Attorney General has interpreted "unconditional discharge" in the context of the voting rights statutes to require completion of probation or parole, but not formal restoration of collaterally affected civil rights. *See* 1985 Op. Att'y Gen. No. 103 (Alaska, Jan. 29, 1985).

fails to support Singleton's claim that juror Porter was disqualified from jury service under AS 09.20.020(2). Porter's testimony on *voir dire* indicated a prior conviction for a felony involving moral turpitude. But according to Porter, he had long ago been discharged after serving his sentence and successfully completing his probation. The record provides no reason to suspect that Porter had not been "released from all disability arising under [the] sentence" in his case, and so, no reason to conclude that he had not been "unconditionally discharged." AS 09.20.020(2). Under these circumstances, the status of Porter's voting or hunting rights was irrelevant to his qualification as a juror in Singleton's case.

Singleton next claims that the state violated her right to due process and her discovery rights under Criminal Rule 16 by failing to preserve the names of the witnesses who were at the scene when Singleton, Fuqua, and McCray were arrested. The argument is meritless. At a pretrial discovery hearing on June 16, 1994, Singleton's counsel mentioned that Singleton had not yet received copies of notes made by the officers who arrested her. Counsel went on to say: "The officers interviewed some people or at least spoke to some people at the scene of the—at the incident scene, and we don't have the names of those people. We're hoping they would appear in the officer notes." Superior Court Judge Elaine M. Andrews ordered the notes produced by June 23.

Following this deadline, on July 1, 1994, Fuqua's attorney moved to compel discovery of the names and addresses of the interviewed witnesses. In an affidavit accompanying the motion, Fuqua's attorney indicated that police notes disclosed by the District Attorney's Office did not name the witnesses; the affidavit also indicated that all existing police notes had apparently already been transmitted by the police to the District Attorney's office. Fuqua thus requested a hearing to determine "the reason for the disappearance of the names and the appropriate sanction." The record provides no indication that Singleton joined in Fuqua's motion to compel.

Several days after Fuqua filed his motion to compel, Judge Andrews denied it, concluding that all police notes had been disclosed and that a failure to memorialize the names of bystanders at the scene of the arrest would not amount to a discovery violation or an impermissible failure to preserve evidence. In reaching this conclusion, the judge emphasized that, in the absence of notes, defense counsel's remedy was to interview the arresting officers:

> Defense counsel is free to call the officers and ask them to name the witnesses that they claim to have been able to identify.... There is no basis to claim a "disappearance" of real evidence on the defense version of the facts.

At trial, one of Singleton's arresting officers mentioned that he had not taken notes of the names of bystanders at the arrest scene but that he "knew one of the individuals." The other arresting officer testified that he did not know of any previously undisclosed witnesses to the alleged robbery; when asked about an unidentified person at the arrest scene; the officer responded that the police did not know if that person had been an eyewitness.

No further mention of the discovery issue was made by Fuqua or Singleton. The record is silent as to whether Singleton made any attempt to conduct pretrial interviews with the arresting officers. Neither Singleton nor Fuqua claimed any prejudice at trial.

Singleton fails to demonstrate any error by the trial court. As we have recently held:

> While officers have a duty to preserve potentially exculpatory evidence actually gathered during a criminal investigation, the due process clause has never required officers to undertake a state-of-the-art investigation of all reported crimes. Officers investigating a crime need not "track down every conceivable investigative lead and seize every scintilla of evidence regardless of its apparent importance or lack of importance at the time, or run the risk of denying a defendant due process or his discovery rights." *Nicholson v. State*, 570 P.2d 1058, 1064 (Alaska 1977).

*March v. State*, 859 P.2d 714, 716 (Alaska App.1993).

■ Here, officers at the scene of Singleton's arrest were evidently informed that no one other than Singleton, Fuqua, and McCray had been involved in the alleged robbery. The officers had no obvious basis to believe that other individuals at the arrest scene had "potentially exculpatory evidence." *Id.* If the other individuals were merely bystanders at the scene of the arrest, there is little reason to suppose that they had any material information to offer—exculpatory or inculpatory. If, on the other hand, the individuals at the arrest scene had been companions of Singleton in the van and had indeed witnessed the alleged robbery, their identities would presumably have been known by, or readily available to, Singleton without police assistance. Moreover, Singleton has failed to establish any effort on her part to determine the identities of potential witnesses through direct interview of her arresting officers, as suggested by Judge Andrews. And finally, it appears that Singleton failed even to join in Fuqua's motion to compel disclosure of the bystanders' names.

Under the circumstances, we find no discovery or due process violation.

The conviction is AFFIRMED.