John KAILUKIAK, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6134.

Court of Appeals of Alaska.

May 8, 1998.

---

Michael D. Dieni, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

## OPINION

MANNHEIMER, Judge.

John Kailukiak was convicted of seven counts of first-degree sexual assault, AS 11.41.410(a)(1), and one count of second-degree sexual assault, AS 11.41.420(a)(1), for engaging in non-consensual sexual penetration and non-consensual sexual contact with his adult niece, S.C.. On appeal, Kailukiak asserts that his convictions are flawed by various evidentiary and procedural errors. For the reasons explained here, we affirm Kailukiak's convictions.

Kailukiak was tried on nine counts of first-degree sexual assault, nine corresponding counts of incest, and one count of second-degree sexual assault. According to the evidence presented at trial, Kailukiak first abused S.C. in the mid–1970's, when she was seven or eight years old. Kailukiak, who lived in Tooksook Bay, was visiting Bethel and was staying with his sister, S.C.'s mother. During this visit, Kailukiak performed cunnilingus on his niece, penetrating her vagina so hard that it hurt.

Kailukiak next assaulted S.C. in 1989, when she was twenty years old. Kailukiak was again visiting Bethel and staying at S.C.'s mother's house. Kailukiak lay on top of S.C., pulled down her pants, and forcibly penetrated her with his penis. S.C. was able to stop the assault by biting Kailukiak.

Kailukiak assaulted S.C. twice in 1992. On the first occasion, Kailukiak came to where S.C. was sleeping and digitally penetrated her. On the second occasion, he grabbed her breasts and forcibly kissed her.

In March 1994, Kailukiak and his son came to Bethel to attend the Chamai Festival. S.C. allowed them to stay at her house while they were in town because her mother's house was already full of guests. During this visit, Kailukiak assaulted S.C. a number of different times.

The last sexual assault occurred in May 1994. Kailukiak showed up at S.C.'s house unannounced. While he was visiting, he again engaged in non-consensual sexual penetration with S.C.

The next morning, S.C. told her mother what had happened. Her mother urged her to contact the authorities. The ensuing investigation led to Kailukiak's indictment.

Kailukiak testified at trial. He admitted that he had engaged in sexual intercourse with S.C. during the Chamai Festival, and again in May 1994, but he contended that these acts of intercourse had been consensual.

The jury found Kailukiak guilty of all of the sexual assaults except for two of the six

that were alleged to have occurred during the Chamai Festival.[1]

■ Kailukiak's first point on appeal concerns the superior court's decision to allow a witness to testify by telephone at a pre-trial evidentiary hearing. Shortly after S.C. contacted the authorities, State Trooper Daniel Donaldson flew to Tooksook Bay to interview Kailukiak. When Donaldson arrived, he asked the local Village Public Safety Officer (VPSO), David Bill, to locate Kailukiak and have him come in for an interview. Bill contacted Kailukiak, and later that day Kailukiak participated in an interview with Donaldson.

Following his indictment, Kailukiak moved to suppress his statements to Donaldson. He contended that he had been in custody when he submitted to the interview, and, because of this, his statements should be suppressed because he had not been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Kailukiak's suppression motion was presented at the omnibus hearing held on January 9, 1995. The parties recognized that resolution of Kailukiak's motion would require an evidentiary hearing, so Judge Wood calendared an evidentiary hearing for February 15th.

To support his contention that he had been in custody when he spoke to Donaldson, Kailukiak asserted that VPSO Bill had ordered him to come and be interviewed by the trooper. Kailukiak's assertion meant that Bill was potentially an important witness at the hearing.

It turned out that VPSO Bill was in Hawaii, serving with the National Guard, on the day scheduled for the evidentiary hearing. Even though both the State and the defense asked for a continuance of the hearing so that Bill could attend, Superior Court Judge *pro tem* Mark I. Wood decided to have Bill testify by telephone. Kailukiak's attorney

objected to the judge's decision, but Judge Wood overruled the objection. Pursuant to the judge's ruling, Bill testified by telephone.

Telephonic testimony of witnesses in criminal cases is governed by Alaska Criminal Rule 38.1. The pertinent portion of the rule reads:

> The court may allow telephonic participation of witnesses at bail hearings, omnibus hearings, probation revocation hearings[,] or at trial with the consent of the prosecution and the defendant. The court may allow telephonic participation of witnesses at other hearings in its discretion.

Judge Wood apparently believed that the hearing on Kailukiak's motion to suppress fell within the category of "other hearings". While this interpretation is facially plausible, we conclude that the suppression hearing constituted a continuation of the "omnibus hearing" for purposes of the rule, and therefore the superior court was not authorized to let VPSO Bill testify by telephone over Kailukiak's objection.

The concept of an "omnibus hearing" in criminal cases was promoted thirty years ago by the American Bar Association in the first edition of its Standards for Criminal Justice, "Standards Relating to Discovery and Procedure Before Trial" (Approved Draft, 1970). Standard 5.3 called upon criminal courts to hold a pre-trial hearing (which the ABA drafters denominated an "omnibus hearing") at which essentially all pre-trial matters would be resolved. *Id.*, Standard 5.3 and Commentary, pp. 114–123. Many of the ABA's recommendations for the omnibus hearing and related procedural rules made their way into Alaska's Rules of Criminal Procedure. Criminal Rules 12(b)–(f) and 16(f) are the most notable Alaska progeny of the ABA's recommendations.

The intent of ABA Standard 5.3 was that "[a]ll motions, demurrers[,] and other requests prior to trial should ordinarily be reserved for and presented ... at the Omni-

---

1. The jury also found Kailukiak guilty of seven corresponding counts of incest. However, upon defense motion, the superior court dismissed those incest counts as being duplicative (for double jeopardy purposes) of the sexual assault counts. Dismissing the incest counts may have

been technically incorrect. However, for the purpose of deciding how many convictions should be entered against Kailukiak, the incest counts would clearly merge with the corresponding sexual assault counts. *See Yearty v. State*, 805 P.2d 987, 995–96 (Alaska App.1991).

bus Hearing unless the court otherwise direct[ed]." *See* paragraph (b). "[If an] evidentiary hearing … [was] necessary for a fair and orderly determination of any issue, the Omnibus Hearing should be continued from time to time until all matters raised are properly disposed of." *See* paragraph (c).

Under Alaska Criminal Rule 16(f)(2)(B)–(C), a judge conducting an omnibus hearing is under a duty to "rule on any pending motions which are ripe for decision" and to "schedule any necessary evidentiary hearings" for matters that are not ripe. Unlike ABA Standard 5.3(c) from which it is drawn, Rule 16(f)(2)(C) does not specifically refer to these additional "necessary evidentiary hearings" as continuations of the omnibus hearing. However, in the context of interpreting the scope of permitted telephonic participation under Criminal Rule 38.1, we conclude that the supreme court intended for these additional evidentiary hearings to be deemed continuations of the omnibus hearing. To interpret Rule 38.1 otherwise would lead to arbitrary and inconsistent results.

To the extent that an omnibus hearing represents a time for attending to administrative matters, for scheduling additional court dates, and for presenting argument on motions that will be decided on the pleadings, it would be unnecessary to include "omnibus hearings" in the portion of Criminal Rule 38.1 governing telephonic participation of witnesses. The reason that the penultimate sentence of Rule 38.1 refers to "omnibus hearings" is that the resolution of pre-trial motions often requires the taking of evidence, and a court will often ask the parties to present their witnesses at the omnibus hearing. When testimony is presented at the omnibus hearing itself, Rule 38.1 clearly provides that witnesses may not testify by telephone unless both the government and the defendant agree.

What, then, of cases like Kailukiak's, where the court directs the parties to present their witnesses at a future evidentiary hearing? If we viewed such later evidentiary hearings as separate from the "omnibus hearings" mentioned in Rule 38.1, then the parties' right to object to telephonic testimony would hinge on such factors as the personal preferences of individual judges, the number of contemplated witnesses and the condition of the court's calendar on the day set for the omnibus hearing (that is, whether the court had time to hear the parties' witnesses on that day), and the differences in semantics among the judicial districts.[2]

■ Trial judges should, of course, be as free as possible to fashion procedures that expedite the business of their courts and that satisfy the litigation needs of the parties appearing before them. With regard to the meaning of the term "omnibus hearing" or the function of the "omnibus hearing", we do not mean to imply that one procedure is preferable to another (so long as the mandates of Criminal Rules 12 and 16(f) are met). We feel certain, however, that the supreme court (the promulgators of the telephonic testimony rule) intended the rule to apply uniformly, regardless of these variations in semantics or procedure. Thus, our duty is to construe Criminal Rule 38.1 to make sure that the parties' right to object to telephonic testimony remains the same regardless of which term the trial court uses to describe the evidentiary hearing or which procedure the trial court employs to take the testimony needed to resolve pre-trial motions. We therefore hold that, for purposes of construing Criminal Rule 38.1, the term "omnibus hearings" includes the additional evidentiary hearings needed to resolve pre-trial motions filed under Criminal Rule 12(b)–(c).

■ Given our construction of Rule 38.1, it is evident that Judge Wood should not have allowed VPSO Bill to testify telephonically over Kailukiak's objection. Nevertheless, under the facts of Kailukiak's case, we find that this error was harmless.

The State's two witnesses at the evidentiary hearing were Trooper Donaldson and Village Public Safety Officer Bill. Bill's testi-

---

**2.** The court takes judicial notice that, in some judicial districts in this state, the term "omnibus hearing" is most often used to describe the pre-trial conference at which evidentiary hearings are scheduled, while, in other judicial districts, the term "omnibus hearing" generally refers to the hearing at which evidence on pre-trial motions is presented.

mony related solely to what Bill said to Kailukiak to induce him to participate in the interview with Donaldson. Bill testified that he asked Kailukiak to come talk to Donaldson. Kailukiak, for his part, asserted that Bill had worded this "request" more in the form of a demand. Judge Wood resolved this conflicting testimony by finding that, while Kailukiak might have subjectively believed that he was being directed to speak with Donaldson, the objective facts supported Bill's testimony that the request was in fact worded as a request.

If we thought that Judge Wood's resolution of this issue had made any difference to his decision on the motion to suppress, we would vacate that decision and remand for a new hearing. However, Judge Wood's additional findings show that it was irrelevant, for *Miranda* purposes, what Bill might have said to Kailukiak to induce him to come down and talk to the trooper.

Judge Wood found that, when Kailukiak entered the interview room, Trooper Donaldson immediately informed Kailukiak that he was not under arrest, that he was under no obligation to talk to Donaldson, and that he was free to go at any time. Judge Wood further found that, later in the interview, Donaldson again told Kailukiak that he was not under arrest and that he was under no obligation to talk to Donaldson. Judge Wood concluded, "[Kailukiak] was told by the trooper that he didn't have to talk to him, and [I] can only assume that the defendant ... knew and understood that he did not have to talk to him[.]" Kailukiak was, in fact, allowed to leave at the end of the interview, and he was not arrested until after his indictment, one month later.

Given these findings, even if VPSO Bill initially told Kailukiak that he had to talk to the trooper, this *Miranda* issue was resolved by Judge Wood's findings regarding the ensuing conversation between Donaldson and Kailukiak. The record yields no reason to believe that Judge Wood's decision on the motion to suppress would have been any different even if the judge concluded that Bill had misrepresented the tenor of his conversation with Kailukiak. Accordingly, we hold that the error in allowing Bill to testify by

telephone was harmless, and we therefore uphold Judge Wood's denial of Kailukiak's suppression motion.

■ Kailukiak's next claim on appeal is based on his trial attorney's cross-examination of M.B., who is Kailukiak's sister and S.C.'s mother. During the defense attorney's cross-examination of M.B., the following exchange occurred:

DEFENSE COUNSEL: You never told [Kailukiak] not to come to your house, did you?

M.B.: When he was drinking, I didn't like him to come over.

DEFENSE COUNSEL: And when is the last time that you've known him to drink?

M.B.: ... Before this incident happened.

DEFENSE COUNSEL: How long ago?

M.B.: Maybe two weeks before ...—no, it was ... after he went [into] treatment.

DEFENSE COUNSEL: Pardon me?

M.B.: I mean, this was before he went to treatment.

Kailukiak's attorney continued to ask M.B. questions about when and where she had seen Kailukiak drink. The defense attorney did not stop until the prosecutor finally objected that this line of cross-examination was irrelevant.

Kailukiak now contends that Judge Wood committed error when he allowed Kailukiak's attorney to elicit this testimony. Kailukiak argues that many residents of Bethel (the site of his trial) have strong feelings about alcoholism, and thus any evidence of Kailukiak's alcoholism must have prejudiced one or more jurors against him.

■ This claim is frivolous. Kailukiak's attorney never suggested that M.B.'s answers were non-responsive, nor did he seek any other relief from the court. It is not the trial judge's job to represent the defendant or to second-guess the strategy employed by a defense attorney during cross-examination of government witnesses. Judge Wood was under no obligation to interrupt Kailukiak's attorney and prohibit him from pursuing this line of inquiry. There simply was no error.

■ Kailukiak raises one other claim based on his trial attorney's cross-examination of M.B.. The defense attorney was questioning M.B. concerning her awareness that S.C. was afraid of Kailukiak. The following exchange occurred:

> DEFENSE COUNSEL: So, your testimony is now that [S.C.] told you that she was afraid because of what John might do to her?
>
> M.B.: Yes.
>
> DEFENSE COUNSEL: Okay. So, when you say that ... she was afraid because of [Kailukiak], ... that's based on what [S.C.] said, not just based on what—a conclusion that you have. It's just based on what she told you, then?
>
> M.B.: Every one of the family was afraid of him.

On appeal, Kailukiak argues that this testimony—M.B.'s statement that every member of her family was afraid of Kailukiak—was improper character evidence. Kailukiak acknowledges that his trial attorney did not object to M.B.'s answer, nor did the attorney seek any other type of relief from the court. Kailukiak now contends, however, that when M.B. gave this answer to the defense attorney's question, Judge Wood was required to declare a mistrial *sua sponte.*

We again reject Kailukiak's claim. Even though the damaging nature of M.B.'s answer might be plain, the defense attorney was the person responsible for asserting Kailukiak's rights. We have repeatedly cautioned trial judges not to precipitously declare mistrials when there has been no defense request for a mistrial. *See,* for example, *Riney v. State,* 935 P.2d 828, 838–39 (Alaska App.1997), *Nelson v. State,* 874 P.2d 298, 308 (Alaska App.1994), and *March v. State,* 859 P.2d 714, 717 (Alaska App.1993). Kailukiak's defense attorney might have refrained from seeking judicial intervention because he knew, or at least anticipated, that similar testimony was going to be elicited from S.C. Judge Wood did not commit error when he failed to stop Kailukiak's trial on his own motion.

■ Kailukiak's next point on appeal arises from his attorney's cross-examination of the victim, S.C.. The defense attorney was questioning S.C. about whether she forcibly resisted Kailukiak's sexual advances; the following exchange occurred:

> S.C.: I don't fight back very well. It's because, most of my life, I have been beaten up. I don't want to be hit again.
>
> DEFENSE COUNSEL: Not by Mr. Kailukiak, though?
>
> S.C.: No, I haven't, but I've been hit enough times to know what it feels like. I don't want to feel it anymore.
>
> DEFENSE COUNSEL: So, some of the pain that you have inside of you relates to things that have happened in your life to you, [doesn't it, S.C.]?
>
> S.C.: I don't want to be hit, and I'm afraid every time that something's gonna happen, [that] I will get hit. And I tell you, I'm totally terrified of my uncle, because he had hurt me, and I have seen him hurt others. I had seen him beat up his wife. I had seen his wife's face swelled up. I had seen her in her shirts all bloody from him hitting her.

At this point, Judge Wood interrupted the examination. He instructed the jury to disregard S.C.'s last statement as being nonresponsive. The judge told the jury, "Mr. Kailukiak is not on trial for any acts against anybody else, and all you are to consider is evidence as it pertains to the charges in this case ... [.] I'm instructing you at this time to disregard that statement."

Shortly after this exchange, Kailukiak's attorney moved for a mistrial based on S.C.'s answer about Kailukiak's assaults on his wife. However, Judge Wood denied this motion.

On appeal, Kailukiak argues that, even though the judge charged the jury to disregard S.C.'s answer, the damage was done and a mistrial should have been granted. We disagree.

First, S.C.'s answer was both responsive and relevant. The defense attorney was inquiring why S.C. had not resisted Kailukiak more forcefully, and S.C. answered that she was afraid to resist because she personally knew that Kailukiak had severely beaten his wife. This was relevant and admissible evidence. *Compare Allen v. State,* 945

P.2d 1233, 1241–42 (Alaska App.1997), and *McCracken v. State*, 914 P.2d 893, 898–99 (Alaska App.1996) (when self-defense is litigated, the defendant's knowledge of the victim's prior violent acts and the victim's reputation for violence is relevant and admissible to prove the reasonableness of the defendant's fear that the victim was about to attack). Judge Wood erred in Kailukiak's favor when he instructed the jury to completely disregard S.C.'s answer.

Second, Judge Wood acted within his discretion when he refused to grant a mistrial and instead decided to remedy the situation with a cautionary instruction. The judge was in the best position to assess the impact of S.C.'s answer and to evaluate whether the jury was capable of heeding his admonition to disregard it. *See Roth v. State*, 626 P.2d 583, 585 (Alaska App.1981). We have previously held that a trial judge normally acts within his or her discretion in denying a mistrial and instead giving a cautionary instruction when a witness, responding to defense cross-examination, gives a responsive answer that includes inadmissible information. *See Hines v. State*, 703 P.2d 1175, 1178–79 (Alaska App.1985); *see also Preston v. State*, 615 P.2d 594, 603–04 (Alaska 1980). We find no abuse of discretion here.

■ Kailukiak next contends that he was prejudiced by an error that the prosecutor made when playing a tape of Kailukiak's statement to Trooper Donaldson. The parties had agreed beforehand that a certain portion of Kailukiak's statement to Donaldson would not be played for the jury because it concerned Kailukiak's prior assault conviction. The prosecutor played the tape of Kailukiak's statement up to the beginning of the excluded segment; he then stopped the tape and attempted to advance it to a point just past this excluded segment. However, the prosecutor misjudged; when the tape began playing again, the jury heard Trooper Donaldson say, "Oh, for an assault?" The prosecutor immediately stopped the tape and again advanced it, this time past the excluded

segment and into the next admissible portion of Kailukiak's statement.

As soon as the playing of the tape was concluded, Kailukiak's attorney moved for a mistrial. Judge Wood denied this motion. Again, we find no abuse of discretion. The only assaults that the jury knew about were the assaults charged against Kailukiak in this case. In fact, Trooper Donaldson expressly stated at the end of the tape that Kailukiak had no prior criminal record. Thus, only the most far-fetched speculation could have led the jurors to infer, from the four isolated words they heard, that Kailukiak had previously been convicted of a different assault. The erroneous playing of these four words did not warrant a mistrial.

■ Kailukiak next contends that Judge Wood abused his discretion when he allowed S.C. to testify concerning the time that Kailukiak sexually abused her when she was seven or eight years old. This evidence was admissible. Once Kailukiak asserted the defense of consent to the five counts from 1994, evidence of his other sexual assaults upon S.C. became admissible under Evidence Rule 404(b)(3).[3]

■ Leaving Evidence Rule 404(b)(3) aside, Judge Wood further concluded that evidence of Kailukiak's prior sexual abuse of S.C. was relevant to establish the relationship between S.C. and Kailukiak, as well as to corroborate S.C.'s explanation of why she didn't leave her house in March 1994 (while Kailukiak was staying there during the Chamai Festival), even though she claimed that Kailukiak sexually assaulted her several times. S.C. testified that she didn't wish to leave the house because she feared that Kailukiak might molest her children the way he had molested her. This evidence was also potentially relevant to prove the extent of Kailukiak's sexual attraction to S.C.. *See Burke v. State*, 624 P.2d 1240, 1249–1250 (Alaska 1980).

Because this evidence was relevant on several different grounds, we conclude that

---

**3.** Evidence Rule 404(b)(3) states: "In a prosecution for a crime of sexual assault in any degree[,] or attempt to commit sexual assault in any degree, evidence of other sexual assaults by the defendant against the same or another person is admissible if the defendant relies on a defense of consent."

Judge Wood acted within his proper discretion when he ruled that S.C. could testify about Kailukiak's prior act of sexual abuse.

■ Kailukiak next contends that the prosecutor engaged in misconduct during his summation to the jury by repeatedly referring to Kailukiak as a "sex offender". Kailukiak did not object to the prosecutor's argument, so he now must show plain error. *Potts v. State,* 712 P.2d 385, 390 (Alaska App.1985). Having examined the transcript of the summation, we find no plain error. In context, the prosecutor was not appealing to the jurors' prejudices but rather was summarizing what the prosecutor argued the State had proved—that Kailukiak repeatedly engaged in sex with S.C. over her verbal protests and her physical resistance. To the extent that the prosecutor's comments might be criticized, they were less egregious than the comments that were found not to constitute plain error in *Potts.*

■ Kailukiak's final point on appeal is that Judge Wood abused his discretion in failing to conduct an after-trial voir dire of the jurors. After the jury had announced its verdicts and had been discharged, Kailukiak's attorney received a telephone call from one of the jurors. The juror told the defense attorney that, during deliberations, she had felt intimidated and pressured into finding Kailukiak guilty. The juror asserted that, although she was never physically attacked, the other jurors had told her to "shut up" when she attempted to voice her views of the evidence. As a result of this treatment, the juror said, her spirit was eventually broken to the point where she felt she had no choice but to accede to the views of the other jurors.

Following this telephone call, Kailukiak's attorney filed a motion for a new trial. Based on the one juror's assertions, the defense attorney asserted that the remaining jurors had engaged in misconduct during deliberations, and he demanded that Judge Wood conduct an investigation into what had happened during the jury's deliberations.

Judge Wood denied both the request for voir dire examination of the jurors and the motion for new trial. The judge ruled that, under Evidence Rule 606(b), neither Kailukiak's attorney nor the juror herself could testify about any of the subjects described in the telephone call. This ruling was correct. *Tanner v. United States,* 483 U.S. 107, 121, 107 S.Ct. 2739, 2748, 97 L.Ed.2d 90 (1987); *McDonald v. Pless,* 238 U.S. 264, 269, 35 S.Ct. 783, 785, 59 L.Ed. 1300 (1915); *State v. Titus,* 933 P.2d 1165, 1170, 1171–72, 1173–74 (Alaska App.1997); *Turpin v. State,* 890 P.2d 1128, 1131 (Alaska App.1995). *See generally,* Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* (7th ed.1998), Vol. 2, pp. 899–906 (discussing Federal Evidence Rule 606(b), which is essentially the same as Alaska Evidence Rule 606(b)).

Evidence Rule 606(b) prohibits a court from examining jurors "as to any matter or statement occurring during the course of the jury's deliberations[,] or [as] to the effect of any matter or statement upon [a] juror's mind or emotions as influencing the juror to assent to or dissent from the verdict". The rule also prohibits a court from receiving testimony from third parties (here, Kailukiak's attorney) "concerning any matter about which [a] juror would be precluded from testifying". *See Meyer v. State,* 627 P.2d 636, 638 (Alaska 1981) (holding that the trial court properly refused to consider juror affidavits describing purported irregularities in the deliberative process when there was no allegation of extraneous influence on the jury).

■ Jurors can be questioned concerning outside influences on their deliberations—for example, fraud, bribery, threats or coercion by third parties, or other acts of third parties in obstruction of justice. *Van Huff v. Sohio Alaska Petroleum Co.,* 835 P.2d 1181, 1187 (Alaska 1992); *West v. State,* 409 P.2d 847, 852 (Alaska 1966). However, allegations of intimidation or verbal coercion by other jurors during the deliberative process do not qualify as outside influences. Evidence Rule 606(b) precludes a court from receiving testimony concerning the kinds of allegations made by the juror in Kailukiak's case. *See United States v. Stansfield,* 101 F.3d 909, 914 (3rd Cir.1996) (holding that evidence of one juror's purported intimidation or harassment of another juror falls squarely within the

core prohibition of Federal Evidence Rule 606(b)).

Judge Wood acted properly when he refused to conduct the voir dire requested by Kailukiak's attorney and when he denied the motion for new trial based on the juror's allegations.

We have considered and rejected all of Kailukiak's claims of error. Accordingly, the judgement of the superior court is AFFIRMED.