Curt J. FRIEDMANN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9750.

Court of Appeals of Alaska.

Dec. 21, 2007.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Because of a criminal defendant's constitutional right not to be placed in jeopardy a second time for the same offense, our law forbids a trial judge from discharging a jury in the middle of an uncompleted criminal trial unless (1) the defendant consents to this action, or (2) there is a manifest necessity for this action.[1]

Nevertheless, Alaska Criminal Rule 27(d)(3) suggests that the mid-trial dismissal of a jury might be authorized on a separate ground. Criminal Rule 27(d)(3) states that if one or more jurors are unable to perform their duties or are disqualified from perform-

---

1. *Koehler v. State,* 519 P.2d 442, 448 (Alaska 1974); *Nelson v. State,* 874 P.2d 298, 308 (Alaska App.1994); *March v. State,* 859 P.2d 714, 717 (Alaska App.1993); *Staael v. State,* 697 P.2d 1050, 1053 (Alaska App.1985).

ing their duties before the jury retires to consider its verdict, the trial judge is authorized to discharge the affected jurors—and, if there are insufficient alternate jurors to complete the panel, "the jury may be discharged and a new jury then or afterwards formed".

This appeal presents the question of whether a trial judge's authority to discharge a jury in the middle of a criminal trial under Criminal Rule 27(d)(3) is governed by the restrictions that the double jeopardy clause would normally place on this action.

We conclude that the dismissal of a jury in the middle of a criminal trial under Criminal Rule 27(d)(3) must be treated as equivalent to a declaration of a mistrial for double jeopardy purposes. Thus, even when a judge does not expressly label their action a "mistrial", a judge's dismissal of the jury panel under the authority of Criminal Rule 27(d)(3) will bar further prosecution of the defendant unless the defendant consented to the judge's action, or unless there was a manifest necessity for the dismissal of the jury.

In the present case, the superior court dismissed the jury in the middle of trial, then invoked Criminal Rule 27(d)(3) in an attempt to avoid the double jeopardy consequences of this action. However, the record shows that the defendant consented to the dismissal of the jury—that, in fact, the defense attorney counseled the trial judge to adopt this course of action. As a consequence, there was no violation of the double jeopardy clause when the superior court ordered that the defendant be brought to trial a second time.

*Underlying facts*

Curt J. Friedmann, along with co-defendants Stephen L. Hoyt and Thomas R. Saddler, was indicted on several counts of controlled substance misconduct. The State alleged that the three men were partners in the manufacture and distribution of methamphetamine.

The three defendants' cases were joined for trial, and that trial began on August 23, 2005. On that day, a jury was selected and sworn—thus triggering the protections of the double jeopardy clause.[2]

The parties were supposed to deliver their opening statements the following morning, August 24th. But when the court reconvened, Saddler's attorney announced that he had just become aware of a defect in the State's pre-trial discovery. The attorney explained he had never received a laboratory report from the State, or a notice of expert testimony.

Following this announcement, Hoyt's attorney also stated that he did not have a lab report or a notice of expert testimony from the State.

Friedmann's attorney, on the other hand, told the court that he *had* received the State's lab report and its notice of expert testimony.

■ Basically, a trial court can consider two potential remedies when the State fails to make proper pre-trial disclosure under Alaska Criminal Rule 16. The normal remedy is to grant a continuance (*i.e.*, delay the trial) to allow the defendant and their attorney to re-evaluate the defense case in light of the new information.[3] But if the trial has already started, and if the defendant's preparation or presentation of the case has been prejudiced by the lack of this information, the trial court should ordinarily grant a defendant's request for a mistrial.[4]

A few Alaska cases mention a third potential option: suppressing the non-disclosed evidence if the defendant has suffered substantial prejudice, or if the State's failure to disclose the information was willful (*i.e.*, a knowing violation of its obligations under Rule 16).[5] However, the supreme court's decision in *Bostic v. State*, 805 P.2d 344 (Alaska 1991), appears to reject this remedy.

**2.** *Soundara v. State*, 107 P.3d 290, 296 (Alaska App.2005); *March v. State*, 859 P.2d 714, 717 (Alaska App.1993).

**3.** *See Bostic v. State*, 805 P.2d 344, 348 (Alaska 1991); *Williams v. State*, 600 P.2d 741, 742 n. 3 (Alaska 1979); *Stevens v. State*, 582 P.2d 621,

624 n. 9 (Alaska 1978); *Des Jardins v. State*, 551 P.2d 181, 187 (Alaska 1976).

**4.** *See Bostic*, 805 P.2d at 348.

**5.** *See Bostic*, 805 P.2d at 348; *Longley v. State*, 776 P.2d 339, 343 (Alaska App.1989).

The *Bostic* majority declared that, in cases involving violations of the pre-trial discovery provisions of Criminal Rule 16, "[t]he injury to the non-offending party is the same regardless of the intent of the party violating Rule 16, since the [same] advantage inures to the violating party regardless of whether the violation was negligent or deliberate, whether done in good faith or in bad faith." [6]  The majority then described the remedy of mistrial as "a tailored remedy . . . which [both] allow[s] [the defendant] to restructure his defense in light of the sudden revelation of information which he was entitled to have all along, and [allows] the state to put on relevant evidence in its possession, should it deem the evidence too important to proceed without it." [7]  And the two dissenters in *Bostic* declared that a defendant had no right to demand suppression of evidence if the sole problem was a discovery violation, since "[t]he only right implicated . . . is [the defendant's] right to notice in advance of trial". [8]

Returning to the facts of the present case, Saddler's attorney asserted that he would need 90 days to have the physical evidence re-tested, and (depending on the results of the re-testing) to have a rebuttal expert prepare a report.  Because of this, Saddler's attorney argued that continuance of the trial (with the already-selected jury kept waiting for at least 90 days) would be impossible.

However, after explaining that a continuance of the trial would be impossible, Saddler's attorney then declared that he would not consent to a mistrial—and he threatened that, if the court declared a mistrial without his consent, he would seek dismissal of all the charges under the double jeopardy clause.  Therefore, according to Saddler's attorney, the only available remedy was to suppress the State's physical evidence and/or to preclude the State from presenting expert testimony to establish the chemical identity of the physical evidence.

(It was obvious to everyone in the courtroom—including Judge Smith—that suppression of the drugs and/or the expert's testimo-ny would, in effect, require the court to acquit the defendants.)

Up until this point, Friedmann's attorney—the only defense attorney who *had* received all of the State's pre-trial disclosure—had contributed nothing of substance to the discussion.  However, after Saddler's and Hoyt's attorneys had stated their positions regarding the pre-trial disclosure problem, Friedmann's attorney informed Judge Smith that he "ran into this very issue some years ago in front of [Superior Court] Judge [Eric] Sanders":

> *Friedmann's attorney:* [It was] a criminal case where . . . the State did not produce the [notice of] expert . . . and the lab report.  [And] it was a cocaine distribution case: clearly, the case was . . . going to [turn] primarily on [whether the physical evidence] was cocaine or not cocaine.  [And it was] after the jury [was] impaneled [and] jeopardy had attached.
>
> I made . . . the same type of motion [on behalf of the defendant]. . . . And the remedy in that particular case . . . was not exclusion of the evidence.  And because of the fact that it was going to [require] . . . re-test[ing] and that type of thing, a mistrial was declared by the court—which allowed the defense an opportunity to go have the drugs re-tested, and to be able to figure out where we [stood] after [the results] came back.
>
> So I guess [this] Court's options . . . are fairly clear. . . . [I]t's either a continuance, and the jury can come back, or [it's] exclusion. . . . [But] I think, based [on] the case law—there's no willful, wanton behavior on [the part] of the State.  So I think [that] the other option is a mistrial. . . .

After a little more discussion, Friedmann's attorney summed up his position as follows:

> *Friedmann's attorney:* [The way] I look at [it] is [that] the proper remedies here would either be—from my standpoint and from my client's standpoint—a continuance of the trial to allow the [other] defense attorneys to re-examine this evidence and

---

6.  *Bostic*, 805 P.2d at 347.

7.  *Id.* at 348.

8.  *Id.* at 350 (Rabinowitz, J., and Matthews, C.J., dissenting).

look at it with their expert[s], if that's what they ... chose to do, or declare a mistrial in this case. Thank you.

A little later that day, Judge Smith held a hearing to investigate the circumstances surrounding the State's failure to deliver the laboratory report and the notice of expert witness to Saddler's attorney and Hoyt's attorney. Based on the information elicited at this hearing, Judge Eric Smith concluded the State's failure was not willful. "At worst," the judge concluded, the prosecutor's office made "an understandable goof" as to where to send the materials. And, because there was no willful violation of Rule 16, Judge Smith rejected suppression as a remedy.

Judge Smith did, however, conclude that Saddler and Hoyt were entitled to a continuance so that they could re-test the physical evidence. And, because it appeared likely that the jury could not be preserved through the course of a lengthy continuance, Judge Smith concluded that he would probably have to declare a mistrial in the interest of justice.

Judge Smith summoned the jurors to the courtroom and asked if any of them would be unavailable to attend the trial if it was postponed by 45 days. Five jurors raised their hands. Based on these five jurors' responses, and without questioning the jurors further, Judge Smith declared a mistrial and discharged the jury.

About five weeks later, on September 28th, Hoyt's attorney filed a motion to dismiss all of the charges, based on the assertion that a second trial would violate the double jeopardy clause. One week later, Friedmann's attorney filed a short pleading indicating that he joined this motion to dismiss the charges.

After considering this motion to dismiss, Judge Smith concluded (in retrospect) that he had failed to conduct a sufficient inquiry to establish that the five jurors would actually have been unavailable if the trial had been continued for 45 days. Thus, Judge Smith concluded, the record failed to demonstrate that it was manifestly necessary to declare a mistrial.

However, Judge Smith also concluded that it had not been necessary for him to declare a mistrial when he dismissed the jury. Instead, Judge Smith decided that his dismissal of the jury was independently authorized by Criminal Rule 27(d)(3). As we explained earlier in this opinion, Rule 27(d)(3) authorizes a trial judge to discharge a jury and to form a new one (either then or later) if, during the trial, one or more jurors are found to be disqualified or otherwise unable to perform their duties, and if there are insufficient alternate jurors to complete the panel.

Judge Smith concluded that the situation he confronted in Friedmann's, Saddler's, and Hoyt's case was the same situation described in Rule 27(d)(3)—and that, consequently, Rule 27(d)(3) provided independent authority for discharging the jury, even though the record failed to establish a manifest necessity for this action.

In accord with this view of matters, Judge Smith retroactively rescinded his declaration of a mistrial and instead declared that the jury had been discharged under the authority of Criminal Rule 27(d)(3). He then calendared a second trial for the three defendants.

After Judge Smith issued this decision, Friedmann entered a *Cooksey* plea, reserving his right to appeal Judge Smith's ruling that a second trial was not barred by the double jeopardy clause.[9]

*Dismissal of a jury under Criminal Rule 27(d)(3) is the equivalent of a declaration of mistrial for purposes of the guarantee against double jeopardy*

When a criminal defendant is tried by jury, jeopardy attaches once the jury is sworn.[10] This rule is "the linchpin [of] all double jeopardy jurisprudence."[11]

---

**9.** *See Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974) (allowing a defendant to plead no contest to a criminal charge but still preserve the right to pursue a dispositive claim on appeal).

**10.** *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978); *United States v.* *Sammaripa*, 55 F.3d 433, 434 (9th Cir.1995); *Soundara v. State*, 107 P.3d 290, 296 (Alaska App.2005); *March v. State*, 859 P.2d 714, 717 (Alaska App.1993).

**11.** *Crist v. Bretz*, 437 U.S. at 38, 98 S.Ct. at 2162.

And once jeopardy attaches, a defendant is entitled to have their case decided by the original jury empaneled and sworn to try the case (including any duly selected alternates). The defendant can relinquish this right by requesting or consenting to a mistrial. But otherwise, the double jeopardy clause protects the defendant from a renewed trial in front of a different jury unless the record establishes that there was a manifest necessity for stopping the initial trial short of a verdict.[12]

Because a defendant's right to have their case decided by the originally empaneled jury is a crucial aspect of the constitutional protection against double jeopardy,[13] the dismissal of that jury always has constitutional consequences. This remains true even if the jury is dismissed under the authority of Alaska Criminal Rule 27(d)(3)—that is, even when one might arguably describe the defendant's renewed trial as a "continuation" of the original trial, but with a new jury.

The Sixth Circuit faced a similar issue in *Watkins v. Kassulke*, 90 F.3d 138 (6th Cir. 1996), a case in which the trial judge dismissed two jurors in the middle of a criminal trial and replaced them with other members of the original group of potential jurors, even though these other potential jurors had not been designated as alternate jurors and had, in fact, already been dismissed.[14] Although the trial judge did not expressly declare a mistrial when he replaced the two jurors, the Sixth Circuit held that the trial judge's action triggered the defendant's rights under the double jeopardy clause:

> [Even though] the trial court did not formally declare a mistrial, we agree with the parties that what occurred in Watkins's trial should be treated as a mistrial for

purposes of analyzing the double jeopardy question. The original jury did not hear the case through to a verdict, and this fact is the defining characteristic of a mistrial.

*Watkins*, 90 F.3d at 141.

We have examined the Court Rules Attorney's historical file on Alaska Criminal Rule 27(d), and it contains no discussion of this double jeopardy issue. But even in the unlikely event that our supreme court intended Rule 27(d) to supersede the double jeopardy clause, and to abrogate the constitutional protections that normally attend the mid-trial dismissal of a jury in a criminal case, we could not lawfully enforce that supposed intention.

As the Supreme Court of the Territory of New Mexico noted almost a century ago, "It is ... not within the power of the Legislature to take away from the citizens the constitutional guarantee of immunity from [a] second jeopardy." *United States v. Aurandt*, 15 N.M. 292, 107 P. 1064, 1067 (1910). This same principle limits the actions of our supreme court when it acts in its legislative capacity, promulgating rules of procedure. *See Etheredge v. Bradley*, 502 P.2d 146 (Alaska 1972) (holding that the former Alaska civil rule governing pre-judgement attachments violated the due process clauses of both the state and the federal Constitutions).

Moreover, in the absence of clear legislative history to the contrary, we are to interpret Criminal Rule 27(d) so that it is in harmony with the double jeopardy clause.[15] Interpreting the rule in this fashion, we conclude that Criminal Rule 27(d) simply describes the various options that a trial judge may consider when one or more jurors are

---

**12.** *United States v. Dinitz*, 424 U.S. 600, 606–07, 96 S.Ct. 1075, 1078–79, 47 L.Ed.2d 267 (1976); *Watkins v. Kassulke*, 90 F.3d 138, 141 (6th Cir. 1996); Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, *Criminal Procedure* (2nd ed.1999), § 25.1(g), Vol. 5, pp. 647–48.

**13.** *See Arizona v. Washington*, 434 U.S. 497, 503–04, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978); *Crist v. Bretz*, 437 U.S. at 38, 98 S.Ct. at 2162; *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971); *Wade v. Hunt-*

*er*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *United States v. Pavloyianis*, 996 F.2d 1467, 1472 (2nd Cir.1993); *Koehler v. State*, 519 P.2d 442, 447 (Alaska 1974).

**14.** *Watkins*, 90 F.3d at 139–140.

**15.** *See Reutter v. State*, 886 P.2d 1298, 1306 (Alaska App.1994); *State v. R.H.*, 683 P.2d 269, 282 (Alaska App.1984); *Parker v. State*, 667 P.2d 1272, 1274 (Alaska App.1983).

unable to complete their service and there are insufficient alternates to replace them.

One of these options—the option described in subsection (d)(3)—is to dismiss the entire panel and start again. But the fact that this option is listed in the rule does not absolve the trial judge from complying with the mandate of the double jeopardy clause. The trial judge must honor the defendant's right to have the originally empaneled jury decide the case unless the defendant consents to the dismissal of the jury, or unless it is manifestly necessary to begin again.

Of course, when the situation described in Rule 27(d)(3) occurs in a criminal trial—jurors unable to serve, and insufficient alternates to take their place—there will generally be a manifest necessity for declaring a mistrial (unless the parties stipulate under Criminal Rule 23(b) to have the case decided by a smaller jury). But this fact simply bolsters our conclusion that the dismissal of a jury under Rule 27(d)(3) is, constitutionally speaking, the declaration of a mistrial.

### Friedmann consented to this mistrial

■ As explained in the preceding section, the double jeopardy clause does not bar a retrial if the trial judge declares a mistrial in response to the defendant's request, or if the defendant affirmatively consents to the mistrial. That is what happened here.

As we have already described, the trial of Friedmann and his two co-defendants came to an end after the lawyers for the two co-defendants informed the court that they did not have the State's complete pre-trial disclosure. Friedmann's attorney was not in this position; he had received all of the disclosure materials. Thus, when Friedmann's attorney entered the discussion about what should be done, he was in some sense commenting from the sidelines.

(Potentially, Friedmann's attorney could have asked to have Friedmann's case severed from his co-defendants' cases, so that Friedmann could proceed with the already-commenced trial, even though the co-defendants' cases were going to be delayed. However, Friedmann's attorney never requested this relief nor even mentioned this possibility.)

As we have already explained, when Friedmann's attorney joined the discussion, he informed Judge Smith that he (the attorney) had been involved in an earlier case raising "this very issue"—"a criminal case where ... the State did not produce the [notice of] expert ... and the lab report", and where this discovery violation came to light "after the jury [was] impaneled [and] jeopardy had attached". The attorney then spoke favorably of the fact that the other trial judge had handled this problem by declaring a mistrial: "[B]ecause of the fact that [the situation] was going to [require] ... re-test[ing] [of the evidence] and that type of thing, a mistrial was declared by the court—which allowed the defense an opportunity to go have the drugs re-tested, and to be able to figure out where we [stood] after [the results] came back."

Friedmann's attorney then summarized his position:

*Friedmann's attorney:* [The way] I look at [it] is [that] the proper remedies here would either be—from my standpoint and from my client's standpoint—a continuance of the trial to allow the [other] defense attorneys to re-examine this evidence and look at it with their expert[s], if that's what they ... chose to do, or declare a mistrial in this case. Thank you.

Friedmann's attorney did not express a preference for one remedy over the other. But he clearly proposed that Judge Smith pursue one or the other of these courses.

This record shows that Friedmann's attorney actively urged Judge Smith to consider declaring a mistrial, and that the attorney spoke approvingly of the fact that another judge had pursued this same course in an earlier, similar case. The attorney's statements constituted a request for, or at least a consent to, the declaration of a mistrial. Thus, there was no violation of the double jeopardy clause when Judge Smith declared a mistrial and then ordered Friedmann to stand trial a second time.

### Conclusion

The judgement of the superior court is AFFIRMED.