Cordell C. TRITT, Petitioner,

v.

STATE of Alaska, Respondent.

No. A–9600.

Court of Appeals of Alaska.

Jan. 4, 2008.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Petitioner.

Tamara E. de Lucia, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Shortly after the parties completed opening statements in Cordell Tritt's jury trial, the trial court indicated that it would offer the State the option of a mistrial because the court believed that Tritt's opening statement was unfair. The prosecutor chose the court's option of a mistrial over Tritt's objection.

Tritt moved to dismiss the case on the ground that a retrial would violate the double jeopardy clause. The superior court denied the motion to dismiss. Tritt petitioned this court for review, and we granted review. Because we conclude that there was no manifest necessity for a mistrial, we reverse the superior court and direct the superior court to dismiss the charges against Tritt.

### Facts and proceedings

On September 10, 2005, a pickup truck crashed into a utility pole in Fairbanks. Witnesses saw three occupants emerge from the truck, and later identified Tritt as the driver. The police arrested Tritt for felony driving while under the influence and driving while his license was cancelled, suspended, or revoked. Throughout Tritt's processing, Tritt maintained that he was not the driver of the truck. Three days after the crash, another occupant of the truck, Natalie Pitka, went to the police and provided a written statement that she was the driver of the truck when it crashed.

The next day, September 14, the State presented three eyewitnesses to the events after the crash at grand jury, but did not call Pitka. The grand jury charged Tritt with felony driving while under the influence, and the State filed an information charging driving while license cancelled, suspended, or revoked.

Before opening statements at Tritt's jury trial, the prosecutor moved the court for a protective order barring Tritt from introducing hearsay statements Tritt made to the police that he was not driving. Superior Court Judge pro tem Jane F. Kauvar announced that the statements would be inadmissible unless Tritt took the stand in his own defense. Tritt's attorney indicated that he understood.

During Tritt's opening statement, Tritt's attorney argued that Tritt had consistently told police he had not been driving. The State objected, and Judge Kauvar told Tritt's attorney that he must have evidence to support his claim. He replied that he did. Tritt's attorney emphasized this fact two more times before the State objected and asked to be heard. Judge Kauvar responded that the State could be heard after Tritt's opening statement.

Tritt's attorney told the jury that they would hear testimony from Pitka. He explained that Pitka went to the police three days after the accident and provided a written statement that she, not Tritt, had been driving when the pickup crashed into the utility pole. Tritt's attorney continued:

And when this matter was presented to a grand jury for purposes of charging, Ms. Pitka wasn't presented as a witness in this matter by the prosecutor handling the presentment. The three witnesses at the scene that the State chooses to believe were presented.

The prosecutor objected, contending that Tritt was arguing a pretrial motion issue that was improper to discuss in front of the jury. The court sustained the State's objection to this comment. Tritt's attorney then continued, "[Y]ou are the first jury, first body of decision-making citizens in this case, who will hear about what Ms. Pitka had to say with reference to what happened here."

Tritt's attorney completed opening statement moments later, and the court proceeded outside the jury's presence. Judge Kauvar told Tritt that if he did not testify, there would be a mistrial. Tritt's attorney assured Judge Kauvar that Tritt would take the stand.

The prosecutor thought that a jury instruction was necessary to inform the jury that there was nothing improper in the grand jury process. Judge Kauvar said that she thought the opening statement started the trial on an "unfair footing," and indicated that she would give the jury a cautionary instruction if the prosecutor did not want a mistrial.

The prosecutor informed the judge that it would support a decision from the court to

grant a mistrial, as long as there was no bar to a retrial. The prosecutor maintained that "the jury has been irreparably tainted[.]" Tritt opposed a mistrial and pointed out the double jeopardy issue.

Judge Kauvar announced that, if the State wanted a mistrial, she would "grant it on the basis that the evidence that was presented in opening statement ... was highly prejudicial." Judge Kauvar concluded that the jury would be biased and an instruction to the jury ineffective. She found manifest necessity and declared a mistrial.

Tritt moved to dismiss the case on double jeopardy grounds, claiming that manifest necessity did not exist and a mistrial was unnecessary. The case was reassigned to Superior Court Judge Mark I. Wood for consideration on the motion. After the parties submitted briefs and participated in oral arguments, Judge Wood issued a written decision denying Tritt's motion. He based his decision on the finding that manifest necessity existed for mistrial because Tritt's comments "prejudiced the state to such a degree that a cautionary instruction would not have cured the bias." Tritt petitioned for review and this court granted the petition.

### Discussion

*Why we conclude there was no manifest necessity for a mistrial*

■ Jeopardy attaches when the jury is sworn.[1] Once jeopardy attaches, the trial may not be stopped short of a verdict unless the defendant consents or there is manifest necessity for a mistrial.[2] Because of the double jeopardy implications of ending a trial short of a verdict, this court has cautioned trial courts that a mistrial should be declared without a defendant's consent only in "very extraordinary and striking circumstances."[3]

■ We review a trial court's decision on a motion for a mistrial for abuse of discretion.[4] We reverse the trial court only when, after reviewing the whole record, we are left with a definite and firm conviction that the trial court erred in its ruling.[5]

■ Tritt's attorney gave an opening statement that was keyed to an instruction given by Judge Kauvar just before the parties' opening statements that "it is not uncommon for two honest people to witness the same event and hear or see things somewhat differently." The attorney stated that the evidence would show that the visual perspective of the State's witnesses could explain their identification of Tritt as the driver. He said the police did not credit Tritt's denials and tried to gain admissions from Tritt. He summarized Pitka's expected testimony: she had been driving, was herself worried about legal trouble the day of the offense, but went to the police three days after the crash and gave a written statement accepting responsibility as the driver. The attorney pointed out that, at the grand jury, the State presented three witnesses from the scene that it "chooses to believe."

Judge Kauvar (and later, Judge Wood) apparently believed that a mistrial was required because the defense attorney had essentially accused a prosecutor of acting in bad faith by willfully withholding exculpatory evidence from the grand jury.[6] But the defense attorney did not explicitly accuse the prosecutor of any grand jury impropriety. The defense attorney simply noted that the prosecutor had presented three inculpatory witnesses who the authorities believed to be credible, that the prosecutor had not chosen to present Pitka's contrary testimony, and

1. *March v. State*, 859 P.2d 714, 717 (Alaska App. 1993).

2. *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *Browning v. State*, 707 P.2d 266, 268 (Alaska App.1985).

3. *Browning*, 707 P.2d at 268 (quoting *Lewis v. State*, 452 P.2d 892, 896 (Alaska 1969)). *See also Cook v. State*, 36 P.3d 710, 729 (Alaska App. 2001); *Riney v. State*, 935 P.2d 828, 838–39 (Alaska App.1997); *Nelson v. State*, 874 P.2d 298, 308 (Alaska App.1994); *March*, 859 P.2d at 717.

4. *Walker v. State*, 652 P.2d 88, 92 (Alaska 1982) (citing *Amidon v. State*, 565 P.2d 1248, 1261 (Alaska 1977)).

5. *Hamilton v. State*, 59 P.3d 760, 769 (Alaska App.2002) (citing *Keogh v. W.R. Grasle, Inc.*, 816 P.2d 1343, 1349 n. 11 (Alaska 1991)).

6. *See Frink v. State*, 597 P.2d 154, 165–66 (Alaska 1979).

that the twelve members of the petit jury would be the first group to hear both sides of the case.

Anyone familiar with Alaska grand jury practice would understand that the defense attorney was merely describing typical grand jury procedure. Under Alaska law, the prosecutor is normally not obliged to present the defense case to the grand jury,[7] and the trial is the time when the defendant has the opportunity to present a competing view of the episode being litigated.

Judge Kauvar may have feared that the trial jurors would misunderstand the defense attorney's remarks and infer that the prosecutor had acted in bad faith by suppressing exculpatory evidence at grand jury. But the judge could have cured this problem by giving an explanatory instruction to the jurors informing them: (1) that the purpose of grand jury is simply to decide whether there is good reason to require a person to stand trial; (2) that the prosecutor is normally not required to present the defense case to the grand jury; (3) that there was nothing improper about the prosecutor's decision not to call Pitka to testify at the grand jury in Tritt's case; and (4) that it was indeed the trial jury's obligation to now hear both sides of the case and then decide whether the State had proved Tritt's guilt beyond a reasonable doubt.

▓ Because the problem could have been cured in this manner, there was no manifest necessity for a mistrial. Because there was no manifest necessity for declaring a mistrial, and because the mistrial was declared over Tritt's objection, the double jeopardy clause bars the State from trying Tritt again on these charges.

We take this opportunity to again urge trial judges to be cautious, and to carefully consider all of the alternatives before declaring a mistrial without the defendant's consent.

As this case demonstrates, a declaration of a mistrial can have grave consequences. Here, the State will be denied the opportunity to establish Tritt's guilt of felony driving while under the influence. However, the framers of our constitutions (both state and federal) believed that our society would be subjected to greater evils if the government had the power to bring a defendant to trial repeatedly on the same criminal charge.

### Conclusion

The superior court's ruling is REVERSED. Because any attempt to try Tritt again on these charges would violate his rights under the double jeopardy clause, we direct the superior court to dismiss the charges against Tritt.

7. *Id.* at 166.