Christopher H. HEWITT, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9717.

Court of Appeals of Alaska.

July 25, 2008.

Marcia E. Holland, contract attorney, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Douglas H. Kossler, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Christopher H. Hewitt appeals his convictions for felony driving under the influence and driving while his license was revoked.[1] He contends that the evidence presented at his trial was insufficient to support the jury's verdicts; in particular, Hewitt argues that the evidence fails to establish that he (as opposed to someone else) was operating the vehicle. In addition, Hewitt contends that the trial judge should have dismissed the entire jury *venire* (*i.e.*, the group of prospective jurors who had assembled in court for jury selection in Hewitt's case) after the judge, by mistake, started to read the portion of the indictment which alleged that Hewitt had prior convictions for DUI.

For the reasons explained here, we conclude that the evidence was sufficient to support the jury's verdicts, and we further conclude that the trial judge did not abuse his discretion when he decided to cure his mistake by simply telling the jurors that he had read the wrong thing.

*Hewitt's claim that the evidence is insufficient to support his convictions*

When a verdict is challenged as lacking a sufficient basis in the evidence, the question is whether the evidence and the inferences to be drawn from it, viewed in the light most favorable to upholding the verdict, are sufficient to support a conclusion by fairminded jurors that the State had met its burden of proof.[2]

Viewed in the light most favorable to the jury's verdicts, the evidence at Hewitt's trial showed the following:

Around 4:00 a.m. on December 20, 2005, Officer Cory Rupe was stopped at a traffic light. There was a car waiting in front of him, and that car had a single occupant—the driver.

When the light turned green, Rupe followed this car. He saw it turn into the parking lot of a business, Alaska Automotive, and stop in the middle of the lot. Given the time of night, Rupe thought that this behavior was strange, so he turned his patrol car around and drove back to the Alaska Automotive lot. As Rupe approached the parking lot, he saw the car begin moving again. The car pulled up to a door in the Alaska Automotive garage. A man (Hewitt) got out of the car from the driver's seat and then walked to the side of the garage.

Rupe got out of his patrol car and contacted this man. Rupe asked the man for identification, and to explain what he was doing. Hewitt produced an Alaska identification card (not a driver's license), and he asserted that he was at the automotive business for work reasons. When Rupe checked Hewitt's name in the police computer, he learned that Hewitt's license was revoked.

---

1. AS 28.35.030(n) and AS 28.15.291(a), respectively.

2. *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981); *Eide v. State,* 168 P.3d 499, 500–01 (Alaska App.2007).

After Rupe learned that Hewitt's license was revoked, he confronted Hewitt with the fact that he was driving. In response, Hewitt claimed that he had not been driving—that an unnamed "buddy" had been driving the car. Rupe (who had been observing the car for several minutes by that time) replied that there had been no one else in the car. At that point, Hewitt told Rupe, "All right, man. You got me."

This evidence, if believed, was a sufficient basis for a reasonable person to conclude that Hewitt was driving the car. Accordingly, the evidence presented at Hewitt's trial is sufficient to support the jury's verdicts.

*Hewitt's claim that a new jury venire should have been summoned after the trial judge mistakenly began to read the allegation in the indictment that Hewitt had prior convictions for DUI*

■ Hewitt was indicted for felony DUI—that is, DUI committed by a person who has two or more previous convictions for DUI or breath-test refusal within the preceding ten years. Hewitt stipulated that he had the requisite two prior convictions, and the parties agreed that the jury would not be told about these prior convictions or asked to decide the "prior convictions" element of the crime. Instead, the jury would simply decide whether Hewitt was guilty of driving under the influence on the occasion in question.

But when the prospective jurors assembled for jury selection in Hewitt's case, and Superior Court Judge Eric Smith read the indictment to them, the judge slipped up and began to read the language in the indictment that referred to the allegation that Hewitt had previous convictions. The language in question is italicized:

> *The Court:* [The indictment] reads: Count I—that on or about the 20th day of December, 2005, at or near Wasilla, Christopher H. Hewitt drove or operated a motor vehicle while under the influence of an alcoholic beverage, inhalant, or controlled substance [or] when there was .08 percent or more by weight of alcohol in his blood or .8 [pause: the judge corrects himself] .08 or more grams of alcohol per 210 liters of his breath; *that he had previously been con—I'm sorry, I started to read the wrong thing.*

Judge Smith then read Count II of the indictment to the jury (the charge of driving with a revoked license).

Immediately after he finished reading the two charges against Hewitt, Judge Smith cautioned the prospective jurors that "the indictment is not evidence against the defendant", that a defendant "is presumed to be innocent", and that it is the State's task to prove the charges beyond a reasonable doubt by presenting sufficient evidence.

A few moments later, Hewitt's attorney asked for a bench conference. At that conference, the defense attorney pointed out that Judge Smith had started to read the clause of the indictment that referred to the allegation that Hewitt had prior convictions. The defense attorney argued that the jury pool was now tainted and that an entirely new jury *venire* would have to be summoned. Judge Smith declined to do this; he noted that he had "caught [himself] before anything else was said".

On appeal, Hewitt renews the argument that the jury pool should have been dismissed.

■ The question of whether a particular mistake or occurrence requires a mistrial is entrusted to the trial judge's discretion, and an appellate court will reverse the trial judge's decision only if the judge has abused that discretion.[3] Under this standard of review, the trial judge's decision is to be reversed "only when, after reviewing the whole record, [the appellate court is] left with a definite and firm conviction that the trial court erred in its ruling."[4]

■ As the State points out in its brief, technically speaking, Hewitt's attorney was not asking for a "mistrial"—because jeopardy had not yet attached. However, the issue presented here (whether the jury *venire* should have been dismissed and a replace-

---

**3.** *Tritt v. State,* 173 P.3d 1017, 1019 (Alaska App.2008).

**4.** *Id.*

ment *venire* summoned to court) is so closely related to mistrial requests that we conclude it is appropriate to apply the same "abuse of discretion" standard of review.

Perhaps more importantly, the "abuse of discretion" standard of review was designed to govern situations like the one presented here—situations where (1) the law does not specify a particular proper response to the situation, but instead only provides the factors or criteria that a judge should consider, and where (2) reasonable judges applying the correct criteria might reach differing conclusions about how to deal with the problem. In such situations, an appellate court should uphold the trial judge's decision unless, under the circumstances, the judge's decision falls outside the range of reasonable responses to the problem.[5]

Here, when Judge Smith mistakenly started to read the clause of the indictment that referred to the allegation that Hewitt had prior convictions, he immediately caught himself. He told the assembled jurors that he had read the wrong thing, and he also informed the jurors that the assertions contained in an indictment are not evidence and do not dispel the defendant's presumption of innocence.

We also note that, after the jury was selected in Hewitt's case, the jurors were repeatedly told that it was their duty to decide Hewitt's case solely on the evidence presented in court (in light of the judge's instructions on the law). And at the end of the case, just before the parties presented their final arguments, Judge Smith again instructed the jurors that the indictment was not evidence, and that the jury "[was not to] presuppose any facts concerning the case or the defendant solely because an indictment has been filed".

Thus, (1) Judge Smith's initial reference to the "prior convictions" clause of the indictment was never completed; (2) the judge immediately announced to the jury that he had read the wrong thing; and (3) the jurors were repeatedly told that, whatever might be asserted in the indictment, the indictment was not evidence and, under the law, their decision had to be based solely on the evidence. Given these circumstances, we conclude that Judge Smith acted within his proper discretion when he denied the defense request to dismiss the jury *venire* and summon a new one.

*Conclusion*

The judgement of the superior court is AFFIRMED.

---

**5.** *Nelson v. State,* 68 P.3d 402, 406 (Alaska App. 2003).