NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| LETA G. ALLEN, | Court of Appeals No. A-11477 |
| Petitioner, | Trial Court No. 3KN-11-1250 CR |
| v. | |
| STATE OF ALASKA, | O P I N I O N |
| Respondent. | No. 2485 — January 22, 2016 |

Petition for Review from the District Court, Third Judicial District, Kenai, Sharon A. S. Illsley, Judge.

Appearances: Kelly R. Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Petitioner. Mary A. Gilson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Respondent.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

The defendant, Leta G. Allen, was brought to trial on a charge of driving under the influence, but the trial ended without a verdict after the trial judge declared a mistrial over the objection of the defense attorney.

The State now intends to try Allen again on the same charge, and Allen has petitioned us to prohibit the second trial. Allen argues that there was no manifest necessity for the mistrial, and thus the double jeopardy clauses of the federal and state constitutions bar any retrial. [1]

As we explain in this opinion, we conclude that a mistrial was manifestly required. The necessity for a mistrial arose from the fact that, during deliberations, one member of the jury sent a note to the judge asserting that another juror (the foreman) had committed misconduct in two respects. According to the juror's report, (1) the foreman of the jury drove to the section of the highway where the trooper said he observed Allen's impaired driving, for the purpose of personally investigating whether the trooper's description of this area was accurate, and then (2) the foreman reported his findings to the other jurors.

When the trial judge questioned the six jurors about this alleged misconduct, the foreman and three other jurors flatly denied that anything like that had happened. But the other two jurors declared unequivocally that the jury had been informed of the foreman's personal investigation, and that the jurors (as a group) had discussed the foreman's findings.

Given this situation, if the trial was to continue, the trial judge would be required to conduct a further investigation to see who was telling the truth. And during

---

[1] *See Arizona v. Washington*, 434 U.S. 497, 505; 98 S.Ct. 824, 830; 54 L.Ed.2d 717 (1978); *Tritt v. State*, 173 P.3d 1017, 1019 (Alaska App. 2008); *Browning v. State*, 707 P.2d 266, 268 (Alaska App. 1985).

this further investigation, it was inevitable that the six jurors would come to realize that each sub-group of the jury was implicitly accusing the other of lying to the court.

Once the jurors realized this, no reasonable judge could hope to obtain a proper verdict from this jury. Thus, a mistrial was manifestly necessary.

*Underlying facts: the basis of the charge against Allen, and Allen's defense to this charge*

On the afternoon of July 26, 2011, the state troopers received a report that a woman who appeared to be impaired had just driven away from a local gas station. State Trooper Michael Lorring responded to this report.

The report included a description of the woman's vehicle, and Lorring located this vehicle on the highway. Lorring later testified that, as he followed the vehicle, it was "sway[ing]" or "bouncing" within its lane of travel, and at one point Lorring saw the vehicle leave its lane of travel and cross over the fog line onto the shoulder of the road.

When the driver of this vehicle — Allen — pulled into a parking lot, Lorring contacted her. Lorring observed that Allen had bloodshot, watery eyes, that her speech was slurred, and that she swayed as she stood. And, according to Lorring, Allen told him that she thought he was following her because she had driven over the "lineman".

Despite these signs of impairment, Allen did not smell of alcoholic beverages. When Lorring asked Allen if she was taking any medications, Allen said that she was taking four: Vicodin, Paxil, Trazadone, and Valium.

Lorring administered field sobriety tests to Allen, and the results indicated that Allen was impaired. A subsequent DataMaster test showed that Allen had not

consumed any alcohol, but a blood test showed the presence of THC (the active ingredient in marijuana), plus Valium (diazepam) and Trazadone.

Based on all of this, the State charged Allen with driving under the influence. [2]

At Allen's trial, the State called Trooper Lorring, who testified to the information we have described — including the assertion that Allen had once crossed over the fog line of the highway. But during Lorring's cross-examination by Allen's attorney, Lorring admitted that no fog line was visible in the photographs of the stretch of highway where he purportedly saw Allen cross the fog line.

At the end of the trial, Allen's attorney argued that Allen had not been impaired by her medications, and that Allen's unsteadiness and swaying during the field sobriety tests were the result of back pain. And the defense attorney urged the jurors to reject Trooper Lorring's testimony, specifically reminding them that Lorring had conceded, during cross-examination, that the photographs of the highway did not show any fog lines.

*Underlying facts pertaining to the judge's declaration of a mistrial*

Shortly before noon on the final day of Allen's trial, after the trial judge instructed the jury, the jurors retired to begin their deliberations. During the early afternoon, the trial judge received a note from the jury, signed by the jury foreman. This note stated that the jurors were deadlocked — divided three to three.

After some discussion between the judge and the attorneys, it was decided that the jurors should be summoned to the courtroom to receive a *Fields* instruction —

---

[2]   AS 28.35.030(a)(1).

that is, an instruction emphasizing the jurors' duty to meaningfully discuss the case with each other for the purpose of reaching unanimous agreement, either for conviction or acquittal. [3]

But just as that was about to happen, the judge received another note — this time from an individual juror. The bailiff told the judge and the attorneys that this individual juror had written the note outside the other jurors' presence, and that this juror did not want to reveal this communication to the other jurors.

In this note, the juror reported that the jury foreman had driven to the section of the highway where the trooper said he observed Allen driving across the fog line. According to this juror, the foreman reported to the other jurors that there was no fog line there, "so the trooper was not honest and cannot be believed."

After the judge apprised the attorneys of the juror's note, she asked the attorneys if they thought that the jury should continue to deliberate.

The prosecutor, concerned that at least some of the jurors were relying on information that was not presented in court, urged the trial judge to conduct further inquiry into this matter. But Allen's attorney opposed the prosecutor's suggestion. Instead, the defense attorney asked the judge to summon the jurors and simply inquire whether they believed that further deliberations would be fruitful.

The judge decided to follow the defense attorney's suggested course. She summoned the jurors, gave them a *Fields* instruction, and then, without mentioning the individual juror's note, she asked each juror individually whether they thought that the group might be able to reach a verdict if given more time. All six jurors told the judge "no".

---

[3] *See Fields v. State*, 487 P.2d 831, 841-42 (Alaska 1971) (setting out the recommended instruction, and holding that a trial judge should give, or re-give, this instruction if the jury is deadlocked).

After receiving these answers, the judge sent the jurors back to the jury room, and then the judge asked the attorneys to take some time and formulate their positions on what to do next.

When court reconvened, the prosecutor again urged the judge to ask the jurors about the allegations contained in the individual juror's note. The prosecutor argued that it was necessary to find out if the foreman had indeed engaged in independent investigation of the case — and, if so, what information the foreman had shared with the other jurors.

The judge was initially skeptical of this approach. She repeatedly indicated that she thought the jury was hopelessly divided, and that there was no point in making the jury continue. But the defense attorney refused to consent to a mistrial, so the judge finally agreed to question the jurors further — both to find out exactly what had happened and, if misconduct had indeed occurred, to find out if it was curable.

The jurors were summoned to the courtroom, one by one, beginning with the foreman. The judge apprised each juror that she was concerned that the jury might have received information, outside the evidence presented in court, about the existence or non-existence of a fog line on the stretch of highway in question.

Here, for example, is the judge's questioning of the foreman:

> *The Court*: The Court is concerned that information from a source other than what was presented at trial may have entered in to the jury's deliberations, specifically information as to whether the fog line exists or not. Can you tell me whether that's happened?
>
> *Jury Foreman*: Would you repeat that one more time?

*The Court*: I'm just trying to figure out if the jury is taking into account information that was not received here in court, and entered deliberations.

*Jury Foreman*: No. We — no, everything — I thought we really did a pretty good job of discussing what was presented by the State and — and their witnesses, and ...

*The Court*: Okay, ... so, as far as you're concerned, no information besides what was presented in court has been discussed by the jury?

*Jury Foreman*: Not that I'm aware of, no. We discussed what was presented. And we discussed it at quite some length. ... They're — they've been a good group, and there's been no shouting. It's been very — well, thoughtful consideration ... .

. . .

*The Court*: Okay. Just one more question which I neglected to ask: As far as you're aware, did any juror do any independent investigation in this case?

*Jury Foreman*: No.

But the judge's questioning of the next juror elicited a significantly different response:

*The Court*: The Court is concerned, and [is] just trying to figure out, whether or not there's been any discussion of any independent investigation by anyone regarding, for example, the fog line in this case. Has there been something outside of what was presented in trial discussed by the jury?

*Second Juror*: We have discussed the fog line incident.

*The Court*:  And I did not ask that question very well.  And clearly, a jury is required to base their decision only on what they hear in court.  Has there been any discussion about anyone investigating outside of court?  ...  Any jurors?

*Second Juror*:  Yes.

*The Court*:  And I'm not going to ask [you] for names; I'm not interested in that.  Was that something that was discussed in the group as a whole?

*Second Juror*:  It was brought up in the group this morning, yes.

When the third, fourth, and fifth jurors were brought into the courtroom and asked if any extra-judicial information had been presented to the jury, all three of them denied that this had happened.  But the sixth juror corroborated the second juror's assertion that there *had* been discussion of outside information.  Specifically, the sixth juror told the court:

*Sixth Juror*:  We were instructed not to visit the sites [or] anything else.  And we went in and sat down [to deliberate], and the first thing [the foreman] said was, "Let's take a vote;  I already know where I am.  I went to the site; I visited it.  There's no fog line."

And then he went on to give us all of his reasons why, you know, [he did not] believe that the State presented a good case.  ...  And we tried to go back to the evidence, and each time [he stated that] the trooper was dishonest:  "We can't believe what the trooper said.  He didn't tell the truth about the fog line."  ...  And he was adamant from the beginning that he would not change his mind, because he went to the site and visited [it].

After the sixth juror made these statements, the defense attorney questioned the juror and suggested that the foreman might not have conducted a special investigation — that the foreman might simply have traveled down this section of the highway as part of his daily routine. But the juror told the defense attorney that this was not the case:

> *Sixth Juror*: No, [the foreman] went out of his way [to make these observations], because he lives in a different direction. And he made a point that he went there specifically to see about this case, and [to] show ... basically that the trooper was wrong.

This sixth juror assured the court that all of the jurors were "getting along fine" — "nobody's violent, [and we're] all very amicable". The problem, according to this juror, was the foreman's attempt "to bring outside evidence into [the case]."

After completing this *voir dire* examination of the six jurors, the judge again asked the attorneys how they stood on the question of a mistrial.

The prosecutor took no position. He told the judge that, as far as he was concerned, the decision was up to Allen's attorney: if the defense did not request a mistrial, then the jurors should be instructed to continue their deliberations. And Allen's attorney, for his part, declared that he would not agree to a mistrial.

Despite the parties' positions on this matter, the judge declared a mistrial because the judge concluded that "there [was] no probability that a unanimous verdict [could] be reached."

(The judge expressly declined to make a finding as to whether the jury foreman had actually engaged in independent investigation of the case, or whether any extraneous information had actually been discussed during the jury's deliberations.

2485

Rather, she simply cited the inconsistency between the jurors' accounts as one additional reason to conclude that the jurors were not going to reach a unanimous verdict.)

A few minutes later, the judge summoned the jurors to the courtroom and informed them that the trial was over.

*Why we conclude that there was a manifest necessity for the mistrial*

Allen's trial judge was presented with substantial reason to believe that the jury foreman engaged in a private investigation of the facts, and then communicated the results of his investigation to the other jurors. This allegation, if true, meant that the integrity of the jury's deliberations had been compromised, and the trial judge would be required to take curative action. Thus, the judge's individual examination of the six jurors was both proper and necessary.

(We note that the type of inquiry that the judge conducted here would be allowed even *after* the jury returned its verdict — because, under Alaska Evidence Rule 606(b), a jury's verdict may be impeached by juror testimony "on the question [of] whether extraneous prejudicial information was improperly brought to the jury's attention". In Allen's case, Evidence Rule 606(b) did not even apply — because the inquiry concerning the jury's potential exposure to extraneous information was conducted *during* the jury's deliberations, *before* a verdict was reached, to make sure that the jury's deliberations remained lawful. As this Court explained in *Larson v. State*, 79 P.3d 650, 653 (Alaska App. 2003), "Evidence Rule 606(b) ... does not restrict the use of [juror] evidence when the court investigates potential juror misconduct before the jury renders its decision.")

The results of the judge's inquiry (*i.e.*, the judge's individual examinations of the six jurors) demonstrated the manifest necessity for a mistrial. By the end of the

judge's inquiry, it was clear that the answers given by four of the jurors were irreconcilable with the answers given by the other two jurors. Somebody was lying to the court.

The jurors would not necessarily have been aware of this, because the six of them were questioned individually, outside each other's presence. But the judge had to make a decision about whether to continue the trial, given these conflicting answers and given the unresolved possibility that extra-judicial information had been injected into the jury's deliberations.

If the trial was to continue, the trial judge would have to conduct a more probing inquiry to ascertain the truth or falsity of the allegation of misconduct. And when the judge conducted this additional inquiry, the jurors would inevitably become aware that the two groups of jurors were implicitly accusing each other of lying to the court.

Once the jurors became aware of this, no reasonable judge would expect the jury to be capable of rendering a proper verdict. For this reason, we conclude that it was manifestly necessary to declare a mistrial.

*Conclusion*

Under the facts of this case, we hold that the district court's declaration of a mistrial was justified by a manifest necessity. The State is therefore authorized to bring Allen to trial again.

However, we wish to caution trial judges — once more[4] — that they must be extremely hesitant to declare a mistrial without the express consent of the

---

[4] *See, e.g., Cook v. State*, 36 P.3d 710, 729 (Alaska App. 2001); *Riney v. State*, 935 P.2d 828, 838 (Alaska App. 1997); *Cross v. State*, 813 P.2d 691, 694 (Alaska App. 1991).

defense. Because of the constitutional protection against double jeopardy, a wrong decision will mean that the State will be barred from retrying the defendant, regardless of the strength of the State's evidence.

This caution is particularly applicable in situations like the present case, where the defense attorney urged the court not to declare a mistrial, and the prosecutor took the position that the court should adhere to the defense attorney's wishes. We have affirmed the trial judge's decision only because of the unusual circumstances of Allen's case.