NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

AARON K. WILLIAMS,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12970
Trial Court No. 1JU-15-01212 CR

O P I N I O N

No. 2700 — April 23, 2021

Appeal from the Superior Court, First Judicial District, Juneau, Trevor Stephens, Judge.

Appearances: Marilyn J. Kamm, Attorney at Law, Anchorage, under contract with the Office of Public Advocacy, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD.

Aaron K. Williams was convicted, following a jury trial, of second-degree sexual assault for vaginally penetrating his cousin while she was unconscious.[1] Williams raises four issues on appeal. For the reasons explained in this opinion, we reject Williams's arguments and affirm his conviction.

*Williams's argument that the trial court improperly admitted text messages sent from his phone to the victim*

Williams sent a series of text messages to the victim, D.M., the day after the sexual assault. These text messages were admitted at trial in the form of photographs of the text messages as they appeared on D.M.'s and Williams's phones. On appeal, Williams argues that these text messages were improperly admitted for two reasons.

First, Williams argues that the State was required to produce an expert witness who could testify that the texts were sent from Williams's cell phone. But Williams's defense attorney did not dispute at trial that the texts were sent from Williams's cell phone, and she never argued that an expert was required to testify to this fact before the texts could be admitted.[2] This argument is therefore not preserved, and Williams must show plain error.[3] Given the defense attorney's acknowledgment that the texts were sent from Williams's cell phone, we find no plain error.

Second, Williams argues that even if the messages were sent from his phone, there was insufficient evidence to show that he authored the text messages. Williams frames this as an "authenticity" issue under Alaska Evidence Rule 901. Rule

---

[1]   AS 11.41.420(a)(3).

[2]   *See Pierce v. State*, 261 P.3d 428, 430-31 (Alaska App. 2011) ("[A] litigant is not entitled to pursue a claim on appeal unless that claim was presented to the lower court . . . [and] the lower court issued a ruling on the merits of that claim.").

[3]   *See Adams v. State*, 261 P.3d 758, 764 (Alaska 2011).

901 states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The commentary to the rule explains that the "requirement of showing authenticity or identity falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in Rule 104(b)."[4] Alaska Evidence Rule 104(b), in turn, provides that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

Under these rules, the key question is whether the State presented "sufficient evidence" to "support a finding that the matter in question is what its proponent claims" — *i.e.*, to support a finding that the text messages in question were authored by Williams.

The record is clear that the State met that burden here.[5] First, D.M. testified that she had previously texted and called Williams at that number on other occasions, including in the hours before the sexual assault. Next, one of the text messages sent from Williams's phone to D.M. after the sexual assault asked D.M. to delay telling the police about the assault until Williams could visit his ailing mother and grandmother. Williams made an identical request to D.M. over a recorded phone call that same day, suggesting that Williams was also the person who sent the text messages. Finally, the police

---

[4]   Alaska R. Evid. 901 cmt. para. 1 (quoting advisory committee's notes to Federal Evidence Rule 901).

[5]   *See State v. Savage*, 920 N.W.2d 692, 703 (Neb. 2018) ("The proponent of the text messages is not required to conclusively prove who authored the text messages. The possibility of an alteration or misuse by another generally goes to weight, not admissibility." (footnotes omitted)). *See generally* George L. Blum, Annotation, *Authentication of Text Messages*, 38 A.L.R. 7th Art. 2, § 35 (2018).

interviewed Williams within twenty-four hours of the sexual assault, and during that interview, Williams was in possession of his cell phone, admitted that he had used his cell phone throughout the day, and never claimed during the interview that anyone else had used his cell phone to make calls or send text messages, even though the police specifically asked him about communications made on his cell phone.

Williams points out that some of the facts noted above were not testified to until after the text messages were admitted into evidence, and he argues that therefore the trial court erred in concluding that the evidence was sufficient *at the time* it admitted the text messages into evidence. But Williams has failed to explain how an error in the timing of the admission of the text messages caused him prejudice. Accordingly, we find no error.

For all these reasons, we reject Williams's argument that the admission of the text messages requires reversal of his conviction.

*Williams's argument that the trial court erred in denying his motion for a mistrial based on the victim's demeanor on the witness stand*

Next, Williams argues that D.M.'s demeanor on the witness stand was prejudicial and that the trial court erred when it denied his motion for a mistrial on that basis. We disagree.

Prior to D.M.'s testimony, the prosecutor notified the trial court that D.M. had expressed a great deal of concern about having to walk so closely to Williams to get to the witness stand. Both parties and the trial court agreed that D.M. could enter and exit the courtroom outside the presence of the jury, and that Williams and defense counsel would move away from the counsel table when D.M. entered. Even with these accommodations, D.M. became sick and vomited shortly after entering the courtroom (before the jury had entered). The court took a recess for approximately half an hour,

during which time the prosecutor attempted to console D.M. and get her to a point where she was comfortable testifying. After the recess, the jury was brought back into the room, and D.M. was called to testify.

At the beginning of D.M.'s testimony, a juror complained that he could not hear her. The parties and the trial court agreed to move D.M. closer to the jury. D.M. then testified without incident for a few minutes, until the prosecutor asked her if she had ever had a sexual relationship with Williams. D.M. apparently had some sort of visible reaction to this question, as it prompted the prosecutor to immediately follow up with "Maybe we need to take a — let me know if you need to take a break, okay?"

The trial court then had the jury step out for a few minutes. The court later explained on the record that after the prosecutor asked D.M. about needing a break, D.M. turned to her left and had a tissue over her mouth. Then, as the jury was stepping out of the courtroom, D.M. vomited "a little bit," and after the jury left, she vomited more.

Defense counsel moved for a mistrial. The trial court denied this request, noting that a person's demeanor on the witness stand is valid evidence that the jury can consider. Williams now appeals that ruling.

This Court has previously recognized that a victim's testimony in a sexual assault case is "an obviously emotional and embarrassing situation" that can cause strong reactions.[6] But a witness's demeanor is generally a relevant consideration for the jury.[7]

---

[6] *Xavier v. State*, 2011 WL 746630, at *2 (Alaska App. Mar. 2, 2011) (unpublished).

[7] *See Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 20 P.3d 1130, 1136 (Alaska 2001) ("The significance of live testimony and demeanor evidence has been long recognized."); Alaska Criminal Pattern Jury Instruction 1.10 (2012) (instructing the jury to consider, *inter alia*, "the witness's attitude, behavior and appearance on the stand[,] and the way the witness testifies" in evaluating the credibility of the witness).

On the other hand, it is also true that a strong emotional or physical reaction by a witness creates a potential for prejudice.[8] The risk is not that the jury will consider the witness's demeanor in reaching its verdict, which is permitted. Rather, the risk is that the witness's demeanor will so overwhelm the other aspects of the witness's testimony and the State's evidence that it will lead the jury to decide the case based solely or primarily on sympathy or emotion for the witness, instead of on a dispassionate analysis of all the evidence presented.[9]

Although this risk is real, it is the trial court, and not this Court, that is in the best position to gauge the effect of the witness's demeanor on the jury, to take steps to mitigate the prejudicial effect of that demeanor, and to determine if (despite those steps) a mistrial is necessary.[10] For this reason, assuming the trial court has otherwise properly applied the law, we will only overturn a trial court's denial of a mistrial if the trial court abused its discretion — *i.e.*, if "under the circumstances, the [court's] decision falls outside the range of reasonable responses to the problem."[11] Having reviewed the record, we find no abuse of discretion here.

---

[8]  *See, e.g.*, *State v. Swenson*, 382 P.2d 614, 624-27 (Wash. 1963) (reversing a defendant's conviction and ordering a new trial based primarily on a key witness's demeanor during cross-examination), *overruled on other grounds by State v. Land*, 851 P.2d 678 (Wash. 1993) (en banc).

[9]  *See Jones v. State*, 1994 WL 16197104, at *5 (Alaska App. Dec. 28, 1994) (unpublished) (concluding that the trial court did not err in conducting jury *voir dire* after the jury possibly saw legal staff comforting a distraught witness, and deciding that jurors were not overcome with emotions for the witness and mistrial was not warranted).

[10]  *See Walker v. State*, 652 P.2d 88, 92 (Alaska 1982), *overruled on other grounds by Young v. State*, 374 P.3d 395 (Alaska 2016); *Xavier*, 2011 WL 746630, at *2.

[11]  *Hewitt v. State*, 188 P.3d 697, 699-70 (Alaska App. 2008).

*Williams's argument that the evidence was insufficient to support his conviction*

Next, Williams argues that the evidence was insufficient to establish that D.M. was incapacitated at the time of the sexual assault. Williams also argues that the evidence was insufficient to establish that he knew that D.M. was incapacitated, because he himself was so intoxicated.[12]

When we review a claim of insufficient evidence, we are required to view the evidence (and all reasonable inferences to be drawn from that evidence) in the light most favorable to upholding the jury's verdict.[13] Viewed in this light, the evidence was sufficient to establish both that D.M. was incapacitated and that Williams knew that D.M. was incapacitated. With respect to D.M.'s incapacitation, D.M. testified that she had four to six shots of whiskey, did not remember lying down in the bed in which she woke up, did not remember the sexual assault, and never would have consciously consented to have sex with Williams. With respect to Williams's knowledge, a witness testified that Williams was coherent and offered the witness a drink just minutes before the sexual assault occurred. Interpreting this evidence in the light most favorable to the jury's verdict, a fair-minded juror could conclude that D.M. was incapacitated and that Williams knew that she was incapacitated (or would have known that she was incapacitated but for his own voluntary intoxication).[14]

---

[12]  *See* former AS 11.41.420(a)(3) (2014).

[13]  *Inga v. State*, 440 P.3d 345, 350 (Alaska App. 2019) (citing *Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012)).

[14]  *See Dorsey v. State*, __ P.3d __, Op. No. 2689, 2021 WL 220648, at *11 (Alaska App. Jan. 22, 2021) (explaining that voluntary intoxication does not negate the "knowingly" *mens rea* element in Alaska (citing AS 11.81.630)).

*Williams's argument that his sentence was excessive*

Finally, Williams challenges his sentence as excessive. Williams was convicted of second-degree sexual assault, a class B felony. Williams was previously convicted of two other felonies — attempted second-degree sexual assault and third-degree assault. Thus, Williams was subject to a presumptive sentencing range of 20 to 35 years' imprisonment.[15]

At sentencing, the court found that the State had proved two statutory aggravators — that Williams had engaged in repeated instances of assaultive behavior and that Williams had committed five or more class A misdemeanors.[16] The court then discussed the *Chaney* criteria at length, emphasizing the need for isolation and the seriousness of Williams's conduct.[17] After considering the *Chaney* criteria, the court imposed a sentence of 35 years with 12 years suspended, or 23 years to serve.

Williams's primary contention regarding his sentence is that the trial court failed to conduct an on-the-record review of sentences imposed in similar second-degree sexual assault cases. But as we recently explained in *Williams v. State*, "the absence of an explicit, on-the-record comparison of sentences imposed in similar cases is most problematic when we are unable to discern the basis for the trial court's sentencing decision — that is, when the record is so lacking in detail as to preclude meaningful appellate review, or when the sentence itself appears arbitrary or disproportionate when examined against other cases."[18]

---

[15] AS 12.55.125(i)(3)(D).

[16] AS 12.55.155(c)(8) and AS 12.55.155(c)(31), respectively.

[17] *See State v. Chaney*, 477 P.2d 441, 443-44 (Alaska 1970); AS 12.55.005.

[18] *Williams v. State*, 480 P.3d 95, 103 (Alaska App. 2021).

That is not the case here. The court engaged in a thorough review of the *Chaney* criteria and explained in detail the reasons it imposed the sentence it did. The record is therefore not "so lacking in detail as to preclude meaningful appellate review." Having independently reviewed the sentencing record, we conclude that Williams has failed to show that his sentence is clearly mistaken.[19]

*Conclusion*

The judgment of the superior court is AFFIRMED.[20]

---

[19]   *See McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974).

[20]   The State notes that the judgment includes a scrivener's error — it reflects that Williams was convicted of second-degree sexual assault but cites the third-degree assault statute, AS 11.41.220(a)(3). We direct the superior court to correct this error in the judgment.